WILMINGTON TRUST COMPANY, GUARDIAN FOR JOSEPH W.
DONNER, JR., and CARROLL E. DONNER, JR.,
Complainant Below,

and MARINE TRUST COMPANY OF BUFFALO and CARROLL
E. DONNER, now LADY TENNYSON, Executors under the
last will of JOSEPH W. DONNER, Deceased, and CARROLL
E. DONNER, now LADY TENNYSON, Individually,
Respondents and Cross-Complainants Below,
Appellants,

*vs.*

WILMINGTON TRUST COMPANY, SUCCEEDING TRUSTEE UNDER
THE TRUST AGREEMENT dated November 20, 1920, WIL-
LIAM H. DONNER, ET AL., and WILMINGTON TRUST COM-
PANY, TRUSTEE under the deed of JOSEPH W. DONNER,
Deceased, dated October 9, 1929, MARINE TRUST COM-
PANY OF BUFFALO, TRUSTEE under the will of JOSEPH
W. DONNER, Deceased, and CARROLL E. DONNER, now
LADY TENNYSON, Individually,

Respondents and Cross-Complainants Below,
Appellees.

WILMINGTON TRUST COMPANY, GUARDIAN FOR JOSEPH W.
DONNER, JR., and CARROLL E. DONNER, JR.,
Complainant Below,
and MARINE TRUST COMPANY OF BUFFALO and CARROLL
E. DONNER, now LADY TENNYSON, Executors under the
last will of JOSEPH W. DONNER, Deceased, MARINE
TRUST COMPANY OF BUFFALO, TRUSTEE under the will
of JOSEPH W. DONNER, Deceased, and CARROLL E. DON-
NER, now LADY TENNYSON, Individually,
Respondents and Cross-Complainants Below,
Appellants,

*vs.*

WILMINGTON TRUST COMPANY, SUCCEEDING TRUSTEE UNDER

THE TRUST AGREEMENT dated November 20, 1920, WILLIAM H. DONNER, ET AL., and WILMINGTON TRUST COMPANY, TRUSTEE under the deed of JOSEPH W. DONNER, dated October 9, 1929,

Respondents and Cross-Complainants Below, Appellees.

*Supreme Court, On Appeal, January 20, 1942.*

LAYTON, C. J., and RICHARDS, RODNEY, SPEAKMAN, and TERRY, J. J., sitting.

*Southerland, Berl, Potter & Leahy,* and *Kenefick, Cooke, Mitchell, Bass & Letchworth,* of Buffalo, N. Y. (*Paul Leahy,* and *James McC. Mitchell* and *Daniel J. Kenefick,* both of Buffalo, N. Y., of counsel), for executors and trustee under the will of *Joseph W. Donner,* and for *Carroll E. Donner,* now *Lady Carroll Tennyson.*

*William H. Foulk,* for Wilmington Trust Co., guardian for Joseph W. Donner, Jr., and Carroll E. Donner, Jr.

*Reuben Satterthwaite, Jr.,* for Robert N. Donner, Elizabeth Donner Winsor, and Dora B. Donner, Jr.

*William S. Satterthwaite,* for Albert L. Massey, guardian *ad litem* for Robert Donner, Jr., Margaret H. Donner, Jr., William Donner Roosevelt, and Curtin Winsor, Jr.

*Robert H. Richards, Caleb S. Layton,* and *Richards, Layton & Finger,* for Wilmington Trust Co., trustee.

LAYTON, Chief Justice, delivering the opinion of the court:

The vexed question is one of conflict of law. Upon its determination depends the validity and effect of a deed of

appointment under a power conferred by a trust agreement. The facts of the case and pertinent provisions of the writings involved have been fully stated in three opinions heretofore filed in the court below. They will be re-stated in the briefest possible way.

On November 20, 1920, William H. Donner, hereinafter referred to as the donor, then domiciled in Buffalo, New York, executed a deed of trust, conveying to his wife, Dora Browing Donner, certain shares of stock in trust for the benefit of his wife and his five children for their respective lives. Subject to certain conditions, the trust to the extent of each child's interest therein was to cease at death; but it was provided that the property and securities held under the trust to produce the income for such deceased child should be transferred and delivered to such lawful child or children or other lawful lineal descendants of the donor then surviving, and in such proportions, as such deceased child should appoint and designate by last will and testament, or other instrument, duly executed, sufficient for such purpose, or in default of appointment, to the lawful child or children or other lawful lineal descendants of the deceased child. Under certain restrictions, each child was empowered to devise not more than one-fourth of his or her share to such person or persons other than the said surviving children and lineal descendants, as he or she should appoint. The donor or any beneficiary was authorized to convey to the trustee additional money or property to be added to the principal of the trust, or to be added to any separate trust fund created or accumulating thereunder. The donor reserved to himself, or in the event of his death, to a majority of the adult beneficiaries, the right from time to time, to subdivide the trust into equal shares for the purpose of segregating into a separate trust or trusts the interests of any one or more of the beneficiaries. By the tenth paragraph of the trust agreement, a majority of the adult beneficiaries, subject to the approval of the donor during his

lifetime, were authorized to change from time to time the trustee under the trust agreement, or under any of the separate trusts, to any trust company of any state, possessing certain qualifications, and in such event, it was directed that such successor trustee "shall hold the said trust estate subject to all the conditions herein to the same effect as though now named herein."

During the years 1921 to 1923, inclusive, the donor made substantial additions to the trust estate, and on January 16, 1924, the value of the securities held by the trustee exceeded $2,000,000.00.

By an instrument dated January 16, 1924, Dora Browing Donner, the wife of the donor and the trustee under the trust agreement, Robert Newsom Donner and Joseph W. Donner, sons of the donor, they being all of the adult beneficiaries under the trust agreement, constituted and appointed Wilmington Trust Company as the trustee to succeed Dora Browing Donner; and she, as trustee, was authorized and directed to transfer and deliver to the successor trustee all of the money, securities and property held by her under the trust agreement. On February 16, 1924, the principal of the trust was delivered to Wilmington Trust Company as successor trustee at the City of Wilmington; and since that time it has administered the trust.

Subsequent to the appointment of the successor trustee, large additions were made to the trust fund, and, *inter alia*, to a separate trust fund for the benefit of Joseph W. Donner, by the donor, by Dora Browing Donner, and by Joseph W. Donner himself.

On February 4, 1927, Joseph W. Donner, residing at Buffalo, New York, executed a last will and testament making no reference whatever to the power of appointment conferred on him by the trust agreement, nor to the property to which the power applied. He possessed property in his own right, however, upon which the will could operate. After making certain dispositions, he devised all of the

residue of his estate to Marine Trust Company of Buffalo in trust for the benefit of his wife, Carroll E. Donner, for her life; and on her death, he devised and bequeathed the property constituting the trust fund to his children then living and to the issue then living of any deceased children, share and share alike, the issue of any deceased child to take the share of the parent.

On October 9, 1929, Joseph W. Donner executed an instrument in which express reference was made to the power of appointment conferred on him by the trust agreement. He appointed and designated his two children, Joseph W. Donner, Jr. and Carroll E. Donner, Jr. to receive all of his interest and share in the trust fund, that is, the share of the principal of the trust fund from which his income thereunder had been derived, including the separate trust fund thereunder, subject to certain conditions. He directed that all of the property and securities thereunder or thereafter subject to his power to devise or appoint should be held by the trustee as a separate trust fund under the article of trust for the benefit of his two children, the income to be paid to them in equal shares. It was provided that at the death of each of the children the trust was to cease to the extent of the deceased child's interest or share, and that all of the property and securities so held under the trust to produce income for such child should be transferred and delivered as such child should have devised or designated, or in default thereof, to his or her lawful lineal descendants, if any; otherwise to remain in trust for the benefit of the survivor of the children; and if there should be no survivor, the share should remain as part of the principal of the trust for the benefit of all of the *cestui que trustents* thereunder.

On November 9, 1929, Joseph W. Donner died, leaving to survive him his widow, and the two children. The will was probated in Erie County, New York; and the executors named, Marine Trust Company of Buffalo and the widow, Carroll E. Donner, duly qualified as such.

On January 23, 1931, William H. Donner, Jr., one of the sons of the donor, died while still a minor, unmarried, and without having executed the power of appointment conferred on him by the trust agreement.

In these circumstances, Wilmington Trust Company, as guardian for the two children of Joseph W. Donner, deceased, sued in the court below to compel Wilmington Trust Company, as successor trustee under the trust agreement of the donor, to account for and to pay over to the complainant the property which it held in trust for the benefit of the deceased. Marine Trust Company of Buffalo, and Carroll E. Donner, now Lady Carroll Tennyson, executors of the will of Joseph W. Donner, deceased, and Marine Trust Company of Buffalo, as trustee under the will, intervened as complainants. The successor trustee filed an answer. It also filed a cross-bill to which answers were filed by the original complainant and the intervenors.

At the first hearing before the late Chancellor no question of conflict of law was raised. It was agreed, apparently, that the validity and effect of the trust agreement were determinable under the law of this State. For reasons which are given in his opinion, reported in 21 *Del. Ch.* 102, 180 A. 597, Chancellor Wolcott concluded that the deed of appointment executed by Joseph W. Donner was a legitimate mode of executing the power conferred upon him by the trust agreement; that the limitation of equitable life interests to the two children of the appointor was valid; but that the limitation of the remainders to the childrens' appointees, and in default of appointment, to their lawful lineal descendants, was in violation of the rule against perpetuities, and invalid.

A re-hearing was granted. Pertinent provisions of the statutes of the State of New York and decisions construing them were made a part of the record. It was contended that the trust was governed by the law of New York, and, therefore, the validity and effect of the deed of appointment

were to be adjudged by that law. In this state of the record, Chancellor Wolcott, in an opinion reported in 21 *Del. Ch.* 188, 186 A. 903, held that the trust was governed by the law of New York; that, under that law, the deed of appointment executed by Joseph W. Donner could not be sustained; that with respect to a one-fourth share of the trust estate of which Joseph W. Donner enjoyed the benefit for life, he had the unrestricted power of disposal, and that share passed under the residuary clause of his will; that as to the other three-fourths, the testator's attempt by the deed of appointment to appoint it in trust for his children for life remainder to their appointees or their lawful lineal descendants was void under the New York law against perpetuities; and, therefore, the children of the testator were entitled absolutely to the three-fourths portion under the terms of the original trust agreement, their father, Joseph W. Donner, having failed to make a valid appointment.

No decree had been signed by the late Chancellor at the time of his death. An informal request for a rehearing was at that time before him, and a rehearing was granted by his successor, the present Chancellor. Some of the pleadings were reframed; and additional testimony, *inter alia,* a deposition of the donor, was introduced. The Chancellor held, in an opinion reported in 25 *Del. Ch.* 121, 15 *A. 2d* 153, that on October 9, 1929, the date of the execution of the deed of appointment by Joseph W. Donner, the trust created by the donor was located in the State of Delaware; that the deed of appointment was a valid exercise of the power of appointment conferred on Joseph W. Donner by the terms of the trust deed of November 20, 1920; that the appointment in trust for life for the benefit of the two children of Joseph W. Donner was a valid exercise of that power; and, finally, that no share or interest of William H. Donner, Jr., who died on January 23, 1931, passed under the deed of appointment, or otherwise, to the two children of Joseph W. Donner, deceased.

From the decree entered, two appeals were taken, one by the guardian, the executors and the widow, individually, the other by the guardian, the executors, Marine Trust Company of Buffalo, trustee under the will of Joseph W. Donner, and the widow, individually.

The power of appointment exercised by Joseph W. Donner for the benefit of his two children had its origin in the donor's deed of trust; the provisions of the deed of appointment are viewed in law as though they had been embodied in that instrument; and the rights and interests appointed to the children are regarded as creations of the trust deed. *Equitable Trust Co. v. Snader,* 17 *Del. Ch.* 203, 151 *A.* 712. The validity of the deed of appointment and of the rights and interests assigned thereunder depend upon the law of the jurisdiction in which the trust had its seat when the power of appointment was exercised.

The diversity of judicial opinion with respect to the discovery of the jurisdiction under whose law the validity of a trust *inter vivos* of intangible personal property is to be determined is such that no useful purpose will be served by an attempted analysis of the decisions. Courts have variously looked to the domicile of the donor, the place of execution of the trust instrument, the situs of the trust property, the place of administration of the trust, the domicile of the trustee, the domicile of the beneficiaries, and to the intent or desire of the donor, or to a combination of some of these denominators, in deciding the troublesome question of conflict of law. In the case of a testamentary trust of personalty it is very generally held that the law of the testator's domicile is the governing law. In some jurisdictions the same rule is applied in the case of a living trust of personal property. Modern methods of transportation with a resulting change of business economy have tended, however, to obliterate state lines and to depreciate the importance of particular localities. The place of one's residence no longer is a sure indication of one's place of business; nor is ownership of

property closely tied to residence. The domicile of the donor is, of course, a circumstance to be considered in the ascertainment of the seat of the trust; but courts, today, are not so much inclined to the uncompromising pursuit of abstract doctrine. They are disposed to take a more realistic and practical view of the problem; and the donor's domicile is no longer regarded as the decisive factor. The place of execution of the trust instrument and the domicile of the beneficiaries are not important indicia. The domicile of the trustee and the place of administration of the trust— quite generally the same place—are important factors; and the intent of the donor, if that can be ascertained, has been increasingly emphasized. Collections of the applicable decisions will be found in 89 *A. L. R.* 1033, and in a valuable article appearing in 89 *University of Pennsylvania Law Review*, 360.

Contracting parties, within definite limits, have some right of choice in the selection of the jurisdiction under whose law their contract is to be governed. And where the donor in a trust agreement has expressed his desire, or if it pleases, his intent to have his trust controlled by the law of a certain state, there seems to be no good reason why his intent should not be respected by the courts, if the selected jurisdiction has a material connection with the transaction. More frequently, perhaps, the trust instrument contains no expression of choice or jurisdiction; but, again, there is no sufficient reason why the donor's choice should be disregarded if his intention in this respect can be ascertained from an examination of attendant facts and circumstances, provided that the same substantial connection between the transaction and the intended jurisdiction shall be found to exist. These are the considered views of a writer of recognized authority who has done much to disentangle the mat of judicial decision. *Cavers, Trusts Inter Vivos,* and the *Conflict of Laws,* 44 *Harvard Law Rev.* 161,

195. See *Hutchison v. Ross*, 262 *N. Y.* 381, 187 *N. E.* 65, 89 *A. L. R.* 1007.

The late Chancellor [21 *Del. Ch.* 188, 186 A. 907] could "see no reason why the intent of a donor should not be allowed full play in the matter of selecting the jurisdiction under which the validity of a trust *inter vivos* is in all respects to be determined, provided of course the property composing the corpus be delivered to a trustee in the selected jurisdiction and there administered." This is but saying that the donor's intention shall prevail if there is a real connection between the selected jurisdiction and the transaction. The present Chancellor was in full accord with this view; and we, in turn, agree that if the intended jurisdiction is substantially linked to the trust, the intention or desire of the donor should be honored. Whether choice of jurisdiction has been affirmatively stated in the trust instrument, and is, therefore, directly provable, or whether the donor's intention is deducible from surrounding facts and circumstances, is a question of evidence and consequent proof; and in what manner the donor's intention is made to appear ought not to affect the result.

Originally the trust under consideration was a trust under the laws of the State of New York for the reason that every operative factor pointed solely to that State. But a change of trustee, not only as to character but as to location, was clearly contemplated and provided for in the trust instrument. At this point the divergence of view in the court below is first manifested. The late Chancellor took his stand squarely on the ground that a mere change of domicile of the trustee accompanied by a change of the location of the trust property does not change the status of the trust. He found nothing in the language of the trust instrument, nor in the surrounding facts and circumstances, which, as he said, pointed to a fundamental modification of the terms and conditions of the trust. He emphasized the fact that a change of jurisdiction would affect the rights

and privileges of the beneficiaries. Expressly, with reference to the phrase contained in the tenth paragraph, *"to the same effect as though now named herein,"* he refused to accord it any other or further significance than as referring to the conditions as stated and existing at the time the trust was created.

The present Chancellor took a more liberal view. He was of opinion that, at the least, the italicized phrase was susceptible to more than one interpretation. In his view the phrase pointed to something more than mere administrative action; and with the aid, perhaps, of the donor's testimony which is detailed in his opinion, he reached the conclusion that the donor had made provision for a shift of the situs of his trust, and for a re-creation of it under the laws of a jurisdiction to be selected by the adult beneficiaries with his approval.

There was no disagreement in the court below with respect to the general rules to be applied in ascertaining the situs of an *inter vivos* trust of personality. The clash of opinion was with respect to a question of interpretation of language. We, after careful consideration, are of opinion that the narrow interpretation put upon the italicized phrase by the late Chancellor was unjustified.

It is a general rule of construction that no word or phrase shall be rejected, or treated as superfluous, redundant or meaningless, if to it a meaning can be given which is reasonable and consistent with the object and purpose of the writing considered as a whole. The donor was careful to provide for a change of trustee subject to his approval in his lifetime. In the event of such change he declared that the successor trustee should "hold the said trust estate subject to all the conditions herein *to the same effect as though now named herein."* The italicized language either has a significance of its own or it is to be considered as no more than a superfluous or redundant phrase. The late Chancellor, in holding that the phrase referred merely to

conditions as stated and existing at the time of the execution of the trust agreement, treated it, virtually, as a redundancy, for if the donor had had in mind no more than that any successor trustee should be bound by the same conditions as was the original appointee, his purpose was clearly expressed by the phrase "subject to all the conditions herein." This phrase speaks of the present, of things that are. But existing and stated conditions were only one object of the donor's care. The effect of a change in the trustee, and, perhaps, the appointment of one in another jurisdiction, was also a matter of solicitude and prevision. Effect is the outcome, the fruit of an act. It points to the future, to things to come, to results and consequences. Conditions existing and the effect of a change of trustee are different fields of thought; and it is not to be supposed that language to which a precise, reasonable and consistent meaning can be assigned, was intended as merely tautological. As we view the donor's language, he very plainly declared that if the trustee should be changed, the successor trustee should not only be bound by the same conditions as were expressed in the trust deed, but also that the successor trustee should have the same status, and should be considered in all respects, as an original appointee. The phrase, reasonably considered, can have no other significance unless it is to be dismissed as a mere redundancy. If the donor, domiciled in New York, had, in the first instance, named Wilmington Trust Company as the guardian of his trust, and had delivered to it in this State the original corpus, making substantial additions thereto from time to time, the late Chancellor, as we read his opinion, would readily have accepted these facts and circumstances as sufficient evidence of the donor's intention to submit his trust to the law of this jurisdiction. The illustrative case put by him is almost precisely the same. "Suppose" said he, "a person domiciled in New York should travel by train to Delaware carrying with him a sum in cash, and in Delaware deposit his money with a Delaware

resident under a specified trust to be there held and administered, and should then return to the state of his domicile, it would seem out of all reason to say that the law of New York rather than that of Delaware should govern the validity of the trust. If it were not so, domicile would become a straitjacket." We are of opinion that the phrase "to the same effect as though now named herein," as applied to the power to appoint a successor trustee in another state, must be accepted as authorizing a removal of the seat of the trust from its original location, and its re-establishment under the law of another jurisdiction. The paragraph is susceptible to interpretation from its terms. It is not necessary to invoke the aid of extraneous facts and circumstances in the discovery of the donor's intent.

There is no substantial reason why a donor, in dealing with that which is his own, may not provide for a change in the location of his trust with a consequent shifting of the controlling law. In an era of economic uncertainty, with vanishing returns from investments and with tax laws approaching confiscation, such a provision would seem to amount to no more than common foresight and prudence. The rights of beneficiaries may, it is true, be disturbed by a shift of jurisdiction, but if such change has been provided for, they have no more cause to complain than other persons who are the recipients of bounty under some condition or limitation.

The adult beneficiaries, with the donor's approval, transferred the seat of the trust from New York to Delaware. On October 9, 1929, when Joseph W. Donner availed himself of the power of appointment conferred on him by the trust agreement, the home of the trust was in this State, and, being subject then to local law, the validity and effect of his deed of appointment and of the rights and interests of the appointees thereunder are to be adjudged and determined by the law of Delaware.

Other conclusions reached by the Chancellor and the

reasons for them are given at length in his opinion. They are approved; and the decree entered in the court below is in all respects affirmed.