119 A.2d 901 (1955)
Elizabeth Donner HANSON, as Executrix and Trustee under the last Will of Dora Browning Donner, deceased, Plaintiff,
v.
WILMINGTON TRUST COMPANY, a Delaware corporation, as Trustee, et al., Defendants.
Court of Chancery of Delaware, New Castle County.
December 28, 1955.
*903 William H. Foulk, Wilmington, for plaintiff Elizabeth Donner Hanson, executrix and trustee.
Caleb S. Layton (of Richards, Layton & Finger), Wilmington, for defendant Wilmington Trust Company, trustee.
Edwin D. Steel, Jr. (of Morris, Steel, Nichols & Arsht), Wilmington, guardian ad litem for defendants, Joseph Donner Winsor, Curtin Winsor, Jr., and Donner Hanson.
Josiah Marvel, Arthur G. Logan and Aubrey B. Lank (of Logan, Marvel, Boggs & Theisen), Wilmington, for defendants, Dora Stewart Lewis, Mary Washington Stewart Borie and Paula Browning Denckla.
Robert B. Walls, Jr., Wilmington, guardian ad litem for defendants, Dorothy B. R. Stewart and William Donner Denckla.
David F. Anderson (of Berl, Potter & Anderson), Wilmington, for defendant Delaware Trust Company, trustee.
HERRMANN, Acting Vice Chancellor.
The Court is called upon to decide (1) whether the doctrine of collateral estoppel precludes the parties from litigating in this action the issue of the validity of a certain written agreement as an inter vivos trust agreement; and, if not, (2) whether the trust and the exercises of the power of appointment thereunder are valid or invalid.
This action for declaratory judgment was brought by Elizabeth Donner Hanson, Executrix and Trustee under the Will of Dora Browning Donner, to determine the persons entitled to assets valued at $417,000. The assets were held at the time of the death of Mrs. Donner by the defendant Wilmington Trust Company under an Agreement entered into by them in 1935. After Mrs. Donner's death, the assets were distributed by Wilmington Trust Company to certain recipients named in Instruments executed by Mrs. Donner in 1949 and 1950 in the exercise of the power of appointment reserved to her under the Agreement of 1935.
The case is before the Court upon four motions for summary judgment. Three of the motions are based upon the contention that the Agreement of 1935 created a valid trust, that the power of appointment there-under was validly exercised in 1949 and 1950, and that the distributions by Wilmington Trust Company pursuant thereto were properly made in discharge of its duty as Trustee under the Agreement. This is the position taken in the motions for summary judgment filed by the plaintiff[1], by Wilmington Trust Company, Trustee, and Edwin D. Steel, Jr., Guardian Ad Litem for three minor defendants, Joseph Donner Winsor, Curtin Winsor, Jr., and Donner Hanson, grandchildren of Mrs. Donner. Opposed to this position is the cross-motion for summary judgment filed by the defendants Dora Stewart Lewis, Mary Washington Stewart Borie and Paula Browning Denckla, other grandchildren of Mrs. Donner. These defendants contend that by application of the doctrine of res judicata or collateral estoppel, or by reason of applicable principles of law, this Court must conclude that the Agreement of 1935 was an agency agreement and not a trust agreement; that, therefore, the Instruments of 1949 and 1950 were invalid testamentary acts and the transfer of assets by Wilmington Trust Company thereunder was erroneous because such assets should have been distributed under the Will of Mrs. Donner. These defendants cross-claim and seek a judgment against Wilmington Trust Company *904 in the amount of $417,000. The defendant Delaware Trust Company, Trustee, supports the motions of the proponents of the Trust. Robert B. Walls, Jr., Guardian Ad Litem for the defendants Dorothy B. R. Stewart and William Donner Denckla, incompetent daughter and minor grandson of Mrs. Donner, supports the motion of the opponents of the Trust. The pending motions are based upon the pleadings and exhibits thereto, affidavits, depositions and certified copies of the Florida proceedings hereinafter discussed.
There does not appear to be any genuine issue as to any of the following facts:
Under the Agreement with Wilmington Trust Company, dated March 25, 1935, Mrs. Donner transferred to it certain designated securities. The Agreement provided that Wilmington Trust Company, as Trustee, should pay the net income of the trust fund to Mrs. Donner for life and, upon her death, should transfer the trust fund, free from the trust, "unto such person or persons * * * as Trustor shall have appointed by the last instrument in writing which she shall have executed and delivered to Trustee."
Thereafter, Mrs. Donner executed and delivered to Wilmington Trust Company an Instrument, dated December 3, 1949, in which, after revoking earlier Instruments by which she purportedly had exercised her power of appointment, she again purported to exercise the power of appointment by directing that, upon her death, the Trustee should transfer the trust fund as follows: (1) $4,000 to three named individuals; (2) $1,000 to each of certain servants; (3) $10,000 to Louisville Trust Company in trust for Benedict H. Hanson, a son-in-law of Mrs. Donner; (4) $10,000 to the Bryn Mawr Hospital; (5) $200,000 to the Delaware Trust Company in trust for Joseph Donner Winsor; (6) $200,000 to the Delaware Trust Company in trust for Donner Hanson; and (7) the residue to the Executrix under Mrs. Donner's Will to be dealt with as stated therein. Mrs. Donner thereafter executed and delivered to Wilmington Trust Company an Instrument, dated July 7, 1950, which purported to partially revoke the Instrument of December 3, 1949 by deleting therefrom the provision for $10,000 to the Louisville Trust Company, Trustee. In all other respects, the Instrument of 1950 confirmed the Instrument of 1949.
At the time of the execution of the Agreement of 1935, Mrs. Donner was a resident of Pennsylvania. The securities referred to in the Agreement were delivered to Wilmington Trust Company in Delaware and they remained in Delaware in the possession of and under the administration of the Trust Company. Wilmington Trust Company has no place of business and transacts no business outside of Delaware.
When Mrs. Donner died in 1952, she was a resident of Palm Beach County, Florida, and had been such since 1944. The Will of Mrs. Donner, dated December 3, 1949, was probated there and the plaintiff herein, Elizabeth Donner Hanson, duly qualified as Executrix under the Will. After bequeathing her personal and household effects to Mrs. Hanson and Dora Donner Ide, two of her daughters, Mrs. Donner made the following disposition of the residue of her property "including any and all property, rights and interest over which I may have power of appointment which prior to my death has not been effectively exercised by me or has been exercised by me in favor of my Executrix": (1) Payment of all death taxes on property appointed by Mrs. Donner under the 1935 Agreement; and (2) the balance to be divided into two equal parts: (a) one part to Delaware Trust Company in trust for Katherine N. R. Denckla, another daughter; and (b) the other part to Mrs. Hanson in trust for Dorothy B. Rodgers Stewart, another daughter, during her lifetime and after her death to Delaware Trust Company in trust for Mrs. Denckla.
When Mrs. Donner died, the securities and cash held by Wilmington Trust Company under the 1935 Agreement amounted to $1,493,629.91. Thereafter, Wilmington Trust Company distributed cash and securities aggregating $417,000 in accordance *905 with the provisions of the Instruments of 1949 and 1950 and deposited the balance to the account of Mrs. Hanson as Executrix and Trustee under the Will of Mrs. Donner. None of the trust funds distributed to Delaware Trust Company, Trustee, have ever been held or administered outside of Delaware.
In January 1954, Mrs. Denckla and Elwin L. Middleton, guardian of the property of Mrs. Stewart, brought an action in the Circuit Court of Palm Beach County, Florida, against Mrs. Hanson, individually and as Executrix of Mrs. Donner's Will, Wilmington Trust Company, Delaware Trust Company and others who were interested in the assets, directly or beneficially, by reason of appointment or the residuary clause of the Will. The Florida action sought a declaratory judgment determining what passed under the Will and the authority of the Executrix over the assets held by Wilmington Trust Company under the 1935 Agreement. Neither Wilmington Trust Company, Delaware Trust Company nor any of the other appointees under the Instrument of 1949, named defendants in the action, were served personally and they did not appear in the action. None of the assets held by Wilmington Trust Company under the Agreement of 1935 have ever been held or administered in Florida. On January 14, 1955, a "summary final decree" was entered by the Florida Court holding (1) that the Court lacked jurisdiction over the assets in Delaware and over Wilmington Trust Company, Delaware Trust Company, and the other nonanswering defendants and that the complaint be dismissed without prejudice as to all such defendants; and (2) that no present interest passed to any beneficiary other than Mrs. Donner under the Agreement of 1935 and the Instrument of 1949 and that the Instrument was testamentary in character and invalid as a testamentary disposition because it was not subscribed by two witnesses as required by Florida law; and (3) that, therefore, as to the parties before the Florida Court, the assets held by Wilmington Trust Company under the Agreement of 1935 passed under the residuary clause of Mrs. Donner's Will.
In the meanwhile, in July 1954, the instant action was begun by Mrs. Hanson as Executrix and Trustee under Mrs. Donner's Will. Named herein as defendants are Wilmington Trust Company as Trustee, Delaware Trust Company as Trustee, the appointees named in the Instruments of Appointment executed by Mrs. Donner, residuary legatees under Mrs. Donner's Will and others having beneficial interests. The complaint herein alleges that it was filed because of the desire of the Executrix to settle the matters in controversy finally and conclusively "as to all parties so that she may effectively perform all of her duties, account as Executrix and enter upon her duties as Trustee." The complaint alleges that no part of the assets involved were located in Florida and that Wilmington Trust Company, Delaware Trust Company and certain other indispensable parties were not before the Florida Court; that, therefore, that Court could not render "an effective and binding decree." The prayer of the complaint in this action is that this Court determine by declaratory judgment the persons who, at the time of Mrs. Donner's death, were entitled to participate in the assets held in trust by Wilmington Trust Company under the 1935 Agreement.

I. Collateral Estoppel

The first question to be decided is whether by reason of the Florida decree, the parties hereto are precluded from litigating in this action the issue of the validity of the Agreement of 1935 as a trust agreement. This is the ultimate question because the validity of the exercises of the power of appointment depends, in this case, upon the validity of the basic Agreement. See Wilmington Trust Co. v. Wilmington Trust Co., 26 Del.Ch. 397, 24 A.2d 309, 312, 139 A.L.R. 1117.
The opponents of the Trust assert the doctrines of res judicata and collateral estoppel. The doctrine of res judicata is not applicable because the Florida action and this action involve different causes of action. The refinement of the res judicata doctrine known as the doctrine of collateral estoppel may be applicable, *906 however, the difference in causes of action notwithstanding. See Niles v. Niles, Del. Ch., 111 A.2d 697; Petrucci v. Landon, 9 Terry 491, 107 A.2d 236; Scott, "Collateral Estoppel by Judgment", 56 Harv.L.Rev. 1. The question, then, is whether the doctrine of collateral estoppel may be invoked as an affirmative defense by the opponents of the Trust to preclude the other parties from obtaining a determination by the courts of this State as to the validity of the Trust. I am of the opinion that this question must be answered in the negative.
The Florida Court made determinations incidentally that it would not have had the jurisdiction to make directly. The action before the Florida Court was brought to determine what passed under the residuary clause of the Will of Mrs. Donner, a Florida domiciliary. As necessary but incidental determinations in that action, the Florida Court concluded that the Agreement of 1935 was invalid as a trust agreement and that, therefore, the exercise of the power of appointment in 1949 was testamentary.[2]
In a direct proceeding, the Florida Court would not have had the jurisdiction to determine the essential validity of an inter vivos trust created in Delaware, all of the assets of which were in Delaware and the Trustee of which is a Delaware corporation which was not before the Court. Since neither the Trust res nor the Trustee were within the jurisdiction of the Florida Court, it is clear that that Court could not have determined the essential validity of the purported Trust in a direct proceeding brought for the purpose. 54 Am.Jur. "Trusts" §§ 564, 584; Lines v. Lines, 142 Pa. 149, 21 A. 809; compare In re Harriman's Estate, 124 Misc. 320, 208 N.Y.S. 672; Harvey v. Fiduciary Trust Co., 299 Mass. 457, 13 N.E.2d 299; Land, "Trusts in the Conflict of Laws", Secs. 41, 43.
The principle is settled that where a court has incidentally determined a matter which it would have had no jurisdiction to determine directly, the judgment is not conclusive in a subsequent action brought to determine directly such incidental matter. In his important and widely quoted discussion of "Collateral Estoppel by Judgment", 56 Harv.L.Rev. 1, 18, Professor A. W. Scott states:
"* * *. It may happen, however, that the court has jurisdiction to determine the cause of action, but that in determining it the court must necessarily decide a question which it would have no jurisdiction to determine in an action brought expressly for its determination. In such a case the judgment of the court is valid, and the cause of action will be extinguished, the judgment operating by way of merger or bar. The question then arises as to the effect by way of collateral estoppel of the determination of the particular matter on which the judgment was based. Although the authorities are somewhat meager, it seems clear that the judgment should not preclude the parties as to the matter in a subsequent action between them brought expressly to determine the matter in a court which has jurisdiction to determine it. It seems clear, also, that after such determination in a subsequent suit, it is the determination of the court in that suit, and not the incidental determination in the prior suit, which is conclusive between the parties."
See also Restatement of Judgments, § 71; Petrucci v. Landon, supra; dissent of Rutledge, J. in Geracy, Inc., v. Hoover, 77 U.S. App.D.C. 55, 133 F.2d 25, 147 A.L.R. 185.
*907 In the final analysis, the question becomes one of public policy. At 56 Harv.L. Rev. 1, 22, Professor Scott states:
"The question in all these cases is one of public policy. Should a court which has not been entrusted with jurisdiction to determine a matter directly be permitted to determine it incidentally, not merely for the purpose of deciding the controversy which it can properly decide, but also with the effect of precluding the parties from litigating the question in those courts which alone are entrusted with jurisdiction to determine it directly?"
This eminent authority on the subject concludes with the admonition that the application of the doctrine of collateral estoppel must always be based upon a sound public policy and that care "must be exercised in its application to see that it works no injustice."
It is my opinion that it would be contrary to sound public policy for this Court to consider itself bound and divested of its duty to determine the essential validity of a Delaware inter vivos trust in a direct proceeding brought for the purpose on the ground that a Court in a sister jurisdiction has incidentally determined the matter in another cause of action in which neither the trust res nor the Trustee was before the Court. The doctrine of collateral estoppel is a judge-made rule. I do not think that it should be enlarged to the extent of depriving the parties herein of a direct determination by this Court as to the validity of the Trust.
Since the purported Trust was created in Delaware and since the assets have been held by the Trustees in Delaware at all times, the "home" of the Trust is in Delaware and its validity must be determined by the law of Delaware. Wilmington Trust Co. v. Wilmington Trust Co., supra; Wilmington Trust Co. v. Sloane, 30 Del.Ch. 103, 54 A.2d 544. This is a case of first impression in this State as to an important phase of the question of the validity of the Trust. The law of this State must be formulated here. It would be contrary to public policy for the Courts of this State to relinquish their duty of enunciating the law controlling a trust having its situs in Delaware and to thereby relegate the Trustee and the Trust res here involved to the law prevailing in another jurisdiction. Compare Taylor v. Crosson, 11 Del. Ch. 145, 98 A. 375.
Moreover, the application of the doctrine of collateral estoppel might work injustice in this, a case which involves only questions of law. It could mean that the parties who were before the Court in the Florida action would be subjected to one conclusion of law while Wilmington Trust Company, Delaware Trust Company and other appointees and beneficiaries, who did not appear in the Florida action, would be controlled by a different rule of law. This could mean that (1) as to the parties before the Florida Court, the disposition of assets would be governed by the residuary clause of the Will, but (2) as to the parties who were not before the Florida Court, the disposition of assets would be governed by the terms of the 1935 Agreement and the exercises of the power of appointment thereunder. This would result in chaos and injustice. The possibility of such result militates against application of the doctrine of collateral estoppel in any case. See Restatement of Judgments, § 70 and com. f, 1948 Supp.; Scott "Collateral Estoppel by Judgment", 56 Harv.L.Rev. 1, 10.
The opponents of the Trust place principal reliance upon Niles v. Niles, supra. That case is not applicable because there the issue previously determined incidentally by the New York Court also arose incidentally before the Chancellor. I do not consider anything stated herein to be in conflict with the decision in the Niles case. The other cases cited by the opponents of the Trust have been examined and have been found to be inapposite. See Slater v. Slater, 372 Pa. 519, 94 A.2d 750; Ugast v. LaFontaine, 189 Md. 227, 55 A.2d 705; United States v. Silliman, 3 Cir., 167 F.2d 607; William Whitman Co. v. Universal Oil Products Co., D.C.D.Del., 92 F.Supp. *908 885; United States v. Stone & Downer Co., 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013.
It is concluded that no determination made in the Florida action is conclusive in this action as to the validity of the Agreement of 1935 as a trust agreement. The parties herein will not be precluded by the defense of collateral estoppel from obtaining the decision of this Court upon that issue.

II. Essential Validity of the Trust Agreement

In order to determine the essential validity of the Agreement of 1935 as a trust agreement, it is necessary to consider its pertinent provisions in some detail.
The Agreement was a formal document, executed by Mrs. Donner and Wilmington Trust Company, in which Mrs. Donner was referred to as Trustor and Wilmington Trust Company was referred to as Trustee. It was recited that the Trustor "desires to establish a trust of certain securities and property" referred to as the "trust fund". It was stated that the Trustor thereby "assigned, transferred and delivered" certain listed securities and property to the Trustee in trust to "hold, manage, invest and reinvest the trust fund, collect the income thereof and pay out of such income all taxes, charges and expenses payable thereout". The Agreement provided for the payment of the net income of the trust fund to the Trustor during her lifetime and, upon her death, the Trustee was directed to convey the fund "free from this trust, unto such person or persons and in such manner and amounts and upon such trusts, terms and conditions as Trustor shall have appointed by the last instrument in writing which she shall have executed and delivered to Trustee"; or in the absence of such instrument, "by her Last Will and Testament, or in default of any such appointment then unto the then living issue of Trustor, per stirpes and not per capita". In default of exercise of the power of appointment and living issue, the fund was to go to the Trustor's next of kin. The Agreement then conferred upon the Trustee all of the ordinary general and broad powers usually conferred upon a Trustee, including the power to retain any and all stocks and securities, to sell and exchange the same, to invest the proceeds of any sales, to vote stock, to participate in reorganizations, to determine whether expenses and other disbursements shall be charged against income or principal, and to hold bearer securities in its own name or in the name of its nominees. It was provided, however, that the Trustee shall exercise its power to sell or exchange trust property, to invest the proceeds of any such sale or other available money and to participate in plans of reorganization, merger, etc., only upon the written direction of, or with the written consent of the Adviser of the trust; provided that if there should be no Adviser, or if the Adviser should fail to act within a ten day period, the Trustee might exercise all such powers and "take such action in the premises as it, in its sole discretion, shall deem to be for the best interest of the beneficiary of this trust". The Trustor named as Adviser her husband or "such other person or persons as Trustor may nominate in writing delivered to Trustee during her lifetime". The Trustor reserved the right to amend or revoke the Trust Agreement in whole or in part and, further, she reserved the right to change the Trustee.
Thus, by the Agreement of 1935, Mrs. Donner reserved to herself the following significant rights and powers: (1) the right to all of the net income for life; (2) the right to amend or revoke the Agreement in whole or in part; (3) the right to change the Trustee; (4) the right to name and change an investment Adviser. The question here presented revolves about those reservations. The opponents of the Trust contend that the cumulation of the reservations created an agency relationship between Mrs. Donner and the Wilmington Trust Company and not a trust relationship; that, therefore, the disposition, insofar as it was intended to take effect after Mrs. Donner's death, was testamentary and invalid for failure to comply with the Florida law relating to the validity of Wills.
It is my opinion that under the law of this State, which governs the essential *909 validity of the Agreement of 1935 as a trust agreement, the reservations of rights and powers made therein by Mrs. Donner did not defeat the inter vivos trust she so clearly intended to create by that Instrument.
The law seems settled as to the first three reservations here involved. Equitable Trust Co. v. Paschall, 13 Del.Ch. 87, 115 A. 356, stands for the proposition that the reservation of a life interest plus the reservation of the power to revoke an inter vivos trust does not invalidate the trust. See also 1 Scott on Trusts, § 57.1; Restatement of Trusts, § 57; 1 Bogert, Trusts and Trustees, p. 483; Leahy v. Old Colony Trust Co., 326 Mass. 49, 93 N.E.2d 238. Furthermore, the power of the settlor of an inter vivos trust to change the trustee has judicial sanction in this State. See Wilmington Trust Co. v. Wilmington Trust Co., supra.
The brunt of the attack on the Agreement of 1935 is centered upon its provisions for the appointment of an investment Adviser and the requirement that the Trustee be governed by the Adviser as to (1) any sale or exchange of trust property; (2) any investment of the proceeds of such sale or of other available money; and (3) any participation in plans of reorganization, merger, etc., of any company in which the Trustee might hold securities. It appears that the effect of such provisions upon the validity of an inter vivos trust has not been directly decided in this State.
It seems to be settled that an intended inter vivos trust does not become testamentary because the trustor reserves the power to direct the trustee as to the making of investments. See Restatement of Trusts, § 57(2) and comment thereon; 1 Scott on Trusts, § 57.2; 1 Bogert, Trusts and Trustees, § 104; National Shawmut Bank of Boston v. Joy, 315 Mass. 457, 53 N.E.2d 113, 125. If the trustor may personally direct or veto investments by the trustee without impairing the validity of an inter vivos trust, it would seem to follow that the trustor may assign that authority to a third party, called "adviser", without destroying the validity of the trust. Such investment counselor has been considered to be a fiduciary, a co-trustee or a quasi-trustee. See Gathright's Trustee v. Gaut, 276 Ky. 562, 124 S.W.2d 782, 120 A.L.R. 1403, and Annotation 120 A.L.R. 1407; Restatement of Trusts, § 185; Scott on Trusts, § 185; 1 Bogert, Trusts and Trustees, p. 536. In Equitable Trust Co. v. Union National Bank, 25 Del.Ch. 281, 18 A.2d 288, this Court found it unnecessary to determine whether or not an investment adviser was a fiduciary. Whatever the precise relationship between the Trustor and the Adviser or the Trustee and the Adviser may be called, I think it is clear that if Mrs. Donner might have reserved to herself the power to specify investments and to direct or veto the Trustee as to investment policy, without impairing the validity of the inter vivos Trust, she may properly delegate that power to another without destroying the inter vivos Trust she so clearly intended to create.
The intent of the Trustor is a critical and controlling factor in determining whether an agency or a trust was created by the Agreement of 1935. See 1 Scott on Trusts (1954 Supp.) § 57.2, p. 74. It is beyond question, I think, that it was Mrs. Donner's intent that the 1935 Agreement should create an inter vivos trust. In the document, she called herself "Trustor", she called Wilmington Trust Company "Trustee" and she referred to the "trust fund" she was thereby conveying to the Trustee.
It appears that there is no established limit to the nature or extent of the powers which the settlor of a valid inter vivos trust may reserve so long as the settlor does not reserve the right to control the trustee as to the details of the administration of the trust. If, however, the settlor reserves such power to control the trustee as to the details of the administration of the trust as to make the trustee a mere agent of the settlor, the disposition may be testamentary so far as it is intended to take effect after the settlor's death. See Restatement of Trusts, § 57 *910 (2); 1 Bogert, Trusts and Trustees, § 104, p. 490.
In the Agreement of 1935, Mrs. Donner did not reserve to herself control over the details of the administration of the Trust as would constitute the Trustee an agent under the principle above stated. In the Agreement, she conveyed title and broad powers to the Trustee limited only by the obligation of the Trustee to consult and follow the advice of the investment counselor. The opponents of the Trust contend, however, that an examination of the actual operation of the Trust Fund, as disclosed by affidavits and depositions, reveals that the Trustee permitted the Adviser to usurp all of its powers and functions as to the details of administration and that, in reality, the Trustee was nothing more than a custodian of the securities.
Under the circumstances of this case, the modus operandi adopted by the Trustee and the Adviser is immaterial to the question of whether the Agreement of 1935 created a relationship of trust or of agency. In the absence of ambiguity, fraud, duress or mistake, the intent of the Trustor and the nature of the relationship created by the Agreement of 1935 is to be determined from the face of the Instrument itself. See Restatement of Trusts, § 38(2), Comment a. There is no showing that Mrs. Donner knew of the facts relied upon by those who assert an agency instead of a trust, nor is there any showing that she was in any way responsible for any surrender of function which may have taken place as between the Trustee and the Adviser in the operation of the trust. Even if we disregard its vigorous denials and assume that the Trustee abandoned its powers and duties to the Adviser, as asserted by the opponents of the Trust, such situation would not convert a trust agreement into an agency agreement in the absence of the knowledge or consent of Mrs. Donner. A trustor, intending to create an inter vivos trust, may not be thwarted by an ex parte act or failure to act on the part of the trustee.
It is manifest upon the face of the Agreement that an inter vivos trust was intended. Effect will be given to the Agreement in accordance with its plain terms so that the clear intent of the Trustor will not be defeated.
The opponents of the Trust place principal reliance upon Restatement of Trusts, § 56; In re Pengelly's Estate, 374 Pa. 358, 97 A.2d 844; Frederick's Appeal, 52 Pa. 338, and In re Hurley's Estate, 16 Pa. Dist. & Co. 521. In Restatement of Trusts, § 56, it is stated that if no interest passes to the beneficiaries before the death of the settlor, the intended trust is testamentary. That principle is not applicable in the instant case because present interests were created at the time of the execution and delivery of the Agreement of 1935 and the exercises of the power of appointment thereunder. The Agreement provided for an ultimate disposition of the assets to "then living issue of Trustor", subject to defeasance by revocation or exercise of the power of appointment. Present interests were thus created when the Agreement and exercises thereunder were executed, even though such interests could not fall into possession until after the death of Mrs. Donner and even though such interests might be ultimately defeated by further exercise of the power of appointment or by revocation. See 1 Bogert, Trusts and Trustees, pp. 481-483; Restatement of Property, § 157, Comments P, Q and R; Gray on Perpetuities, § 112; Simes, Future Interests, § 80; Leahy v. Old Colony Trust Co., supra. Since present interests passed under the Agreement and the exercises of the power of appointment and only the enjoyment thereof was postponed until the Settlor's death, the inter vivos trust here is not defeated by application of the principle stated in § 56 of the Restatement of Trusts. See Brown v. Pennsylvania Co., 2 W.W.Harr. 525, 126 A. 715; Security Trust & Safe Deposit Co. v. Ward, 10 Del.Ch. 408, 93 A. 385; Wilmington Trust Co. v. Wilmington Trust Co., supra; Restatement of Trusts, § 57(1); 1 Scott on Trusts, § 57.1.
*911 The case of In re Pengelly's Estate, supra, does not aid the opponents of the Trust because that case is distinguishable on its facts. There it was found by the Court that the trust instrument merely continued a previously existing agency relationship and the Settlor had reserved complete power to control the Trustee in the administration of the trust. Moreover, the Court in the cited case was concerned with the public policy requiring protection of the rights of widows. The cases of Frederick's Appeal, supra, and In re Hurley's Estate, supra, are likewise clearly distinguishable on their facts and of no assistance.
It is held that the Agreement of 1935 created a valid inter vivos Trust. Since the Trust was valid, the exercises of the power of appointment thereunder by the Instruments of 1949 and 1950 were valid. Wilmington Trust Co. v. Wilmington Trust Co., supra. Accordingly, the distributions made by Wilmington Trust Company constituted a proper discharge of its duties as Trustee under its Agreement with Mrs. Donner.
The motions for summary judgment filed by the Lewis defendants will be denied. The other motions for summary judgment filed herein will be granted.
NOTES
[1] The plaintiff has been barred from proceeding further herein by an injunction issued to her by the Circuit Court of the Fifteenth Judicial Circuit of Florida, in and for Palm Beach County, pursuant to the decree of that Court hereinafter discussed.
[2] The decree of the Florida Court contained no expressed conclusion regarding the invalidity of the Agreement of 1935 as an agreement of trust. Since, however, such determination must have been made before the Court could reach the expressed conclusion that the exercise of the power was testamentary, the prerequisite determination as to the invalidity of the Agreement must be said to be implicit in the decree.