### AMERICAN ELECTRONIC LABORATORIES, INC., Plaintiff,

v.

### Paul S. DOPP, Defendant.

### Civ. A. No. 4078.

United States District Court,
D. Delaware.

Dec. 21, 1972.

S. Samuel Arsht and Lewis S. Black, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiff.

A. Richard Barros, of Brown, Shiels & Barros, Dover, Del., and Arnold I. Roth and Joel W. Sternman, of Rosenman, Colin, Kaye, Petscheck, Freund & Emil, New York City, of counsel, for defendant.

## OPINION

LATCHUM, District Judge.

American Electronic Laboratories, Inc. ("AEL"), a Pennsylvania corporation, sues to recover a judgment in the amount of $1,510,950 from Paul S. Dopp ("Dopp"), a New Jersey citizen, for breach of contract. The complaint charges that Dopp failed to perform a contract, dated February 20, 1970 (the "AEL-Dopp contract"), in which he agreed to purchase from AEL 143,900 shares of Series B Voting Participating Convertible Stock ("Preferred Stock") of Butler Aviation International, Inc. ("Butler"). The action, originally brought in the Superior Court of the State of Delaware in and for New Castle County, was removed to this Court pursuant to 28 U.S.C. § 1441(a).

Two motions are now before the Court for determination: (1) AEL's motion for partial summary judgment and (2) Dopp's motion to amend his answer. These motions will be treated separately.

I. *AEL's Motion For Partial Summary Judgment.*

From the presently developed record, it is undisputed that Dopp entered into the AEL-Dopp contract and that he did not appear at the closing and tender the purchase price for the preferred stock as called for by the contract. Dopp, however, asserts three affirmative defenses in his answer, contending that any one of them relieves him from his obligation to perform the AEL-Dopp contract. In substance, his affirmative defenses allege that on November 20, 1969, AEL and Butler entered into an Agreement and Plan of Reorganization (the "AEL-Butler Contract"), whereby AEL transferred to Butler all the outstanding capital stock of Mooney Aircraft Corporation ("Mooney") in exchange for Butler issuing and transferring to AEL 150,000 shares of Butler's preferred stock. Dopp charges that the warranties and representations contained in the AEL-Butler contract and the accompanying financial statements with respect to Mooney's business and financial affairs were materially false, misleading and inaccurate. Dopp further claims that the provision of Paragraph 1 of the later AEL-Dopp contract, which, in part, reads:

> "The shares are sold by AEL and purchased by Dopp under and subject to all restrictions and agreements as are imposed by . . . [the AEL-Butler contract] executed by AEL and Butler, said . . . [AEL-Butler contract] being hereby incorporated by reference and made a part hereof."

incorporated by reference all the agreements, including AEL's warranties and representations, contained in the AEL-Butler contract. Thus he contends that the false and inaccurate warranties and representations made in connection with the AEL-Butler contract and carried over and incorporated in the AEL-Dopp

contract afford him complete relief from his obligations under the latter agreement.

AEL has moved for partial summary judgment on the ground that none of Dopp's affirmative defenses are valid as a matter of law because under a proper construction of the AEL-Dopp contract it is quite apparent that it did not incorporate the representations and warranties of the AEL-Butler contract.

▇ The AEL-Dopp contract provides in Paragraph 8 "[t]his Agreement shall be governed by the laws of the Commonwealth of Pennsylvania." In this diversity case, this Court, in deciding questions of conflict of law, must follow the rules prevailing in Delaware. Klaxon Co. v. Stentor Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). By virtue of the provisions of Paragraph 8 quoted above, Delaware courts would apply Pennsylvania law which the parties have agreed would govern. Wilmington Trust Co. v. Wilmington Trust Co., 26 Del.Ch. 397, 24 A.2d 309 (Supr. 1942). It has long been the established law of Pennsylvania that the interpretation or construction of a contract is the court's responsibility. Onofrey v. Wolliver, 351 Pa. 18, 40 A.2d 35, 37 (Supr. 1944); Siegert v. Servel, 352 Pa. 316, 42 A.2d 589, 591 (Supr.1945); Kolman v. Kolman, 335 Pa. 113, 6 A.2d 532, 533 (Supr.1939), and in construing the language of a contract, the Court may, in order to determine the intention of the parties, not only consider the language as a whole but also consider the circumstances surrounding the making of the agreement, the subject matter of the contract, and the situation of the parties. Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc., 404 Pa. 53, 171 A.2d 185, 189 (Supr.1961).

▇ The present record, having been greatly amplified by the parties since the earlier proceedings of this case, affords a sufficient basis for the Court's construction of the contract.[1] Based upon the contract as a whole and the surrounding circumstances, the Court concludes that the representations and warranties regarding Mooney's financial and business affairs made by AEL to Butler in the AEL-Butler contract were not incorporated in the AEL-Dopp contract.

First, the present record makes it clear that during the negotiations in which the terms of the AEL-Dopp contract were agreed upon there was absolutely no discussion of any requirement that AEL make to Dopp, in connection with his purchase of the Butler preferred stock, the same representations and warranties regarding Mooney's affairs that AEL made to Butler when the latter purchased the Mooney stock. No one ever advanced such a construction of Paragraph 1 of the AEL-Dopp contract until after this present suit was brought.

Second, Paragraph 1 on its face states that the Butler preferred stock was sold to Dopp under and subject to "all restrictions and agreements imposed by" the AEL-Butler contract. The "restrictions and agreements" referred to are those set forth in Paragraphs 8(c) and 9(a) of the AEL-Butler contract. The reasons why these provisions of the AEL-Butler contract were incorporated in the AEL-Dopp contract become obvious upon analysis of the burdens placed on the stock by those specific paragraphs. Since the 150,000 shares of Butler preferred stock acquired by AEL from Butler in exchange for the Mooney stock were not registered under the Securities Act of 1933, by Paragraph 8 AEL agreed "for itself and *all subsequent holders*" of the Butler preferred stock to notify Butler of any proposed disposition of the preferred stock or common stock into which it may have been converted and not to make a disposition until (i) Butler had notified AEL or *such holder* that,

---

[1]. In prior proceedings, the Court found there was an insufficient record for determining the meaning of the AEL-Dopp contract. 334 F.Supp. 339, 343 (D.Del. 1971).

in the opinion of counsel satisfactory to Butler, no registration of the disposition was required or (ii) Butler had filed a registration statement and it had become effective. By Paragraph 9 of the AEL-Butler contract, AEL gave Butler an assignable option to repurchase any or all of the 150,000 shares of Butler preferred stock or common stock, if converted, at any time prior to December 1, 1970. This option could be exercised by Butler by delivery of a written notice to AEL "or the holder of such stock" and the stock certificates were to be legended to disclose Butler's option.

Because these restrictions contained in the AEL-Butler contract created a substantial burden or encumbrance on the Butler shares involved, it was necessary for AEL to require Dopp, a subsequent holder, to accept those shares subject to the same restrictions. It was the burden of these provisions in the AEL-Butler contract which were incorporated into the AEL-Dopp contract. The fact that the word "agreements" was used in Paragraph 1 of the AEL-Dopp contract refers simply to the agreements AEL made with Butler in Paragraphs 8 and 9 of the AEL-Butler contract, namely, that the restrictions on the disposition of the stock would be binding upon AEL and any subsequent holders.

Third, it is unreasonable to construe the words "all agreements" in Paragraph 1 of the AEL-Dopp agreement to embrace the representations and warranties contained in Paragraph 2 of the AEL-Butler contract regarding Mooney's business affairs. This is so because Paragraph 4 of the AEL-Dopp contract contains its own separate and independent representations and warranties. Moreover, it is unreasonable to believe that AEL's warranties and representations regarding Mooney made to Butler on November 20, 1969 were guaranteed to Dopp three months later on February 20, 1970.

Finally, and most importantly, is Dopp's own contemporaneous conduct which supports the Court's construction. On February 20, 1970, the same date that Dopp agreed to purchase 143,900 shares of Butler preferred stock from AEL, Dopp entered into an agreement with Richard H. Olsen ("Olsen") for the purchase from Olsen of an additional 6,100 shares of Butler preferred stock.[2] The Dopp-Olsen contract is, to a large extent, a Chinese copy of the AEL-Dopp contract.[3] Paragraph 1 thereof provides, in part:

> "The shares are sold by Olsen and purchased by Dopp under and subject to all restrictions and agreements as are imposed by . . . [the AEL-Butler contract], . . . said . . . [AEL-Butler contract] being hereby incorporated by reference and made a part hereof."

Thus, the contract used by Dopp with Olsen, to which AEL was not a party, clearly provides that the shares purchased from Olsen are subject to the restrictions and agreements imposed in the AEL-Butler contract. Of course, since Olsen never made any representations and warranties with respect to Mooney's affairs to Butler, the language can only refer to those restrictive provisions of the AEL-Butler contract which purport to bind future holders and to run with the shares. There is no other possible construction to be given this language used by Dopp in the Olsen agreement and this language must have meant the same thing when used in the AEL-Dopp agreement.

Accordingly, the Court finds that the AEL-Dopp contract did not incorporate by reference the representations and warranties that AEL made to Butler in the AEL-Butler contract and partial summary judgment will be entered dismissing the First, Second and Third Affirmative Defenses from this suit.

2. Olsen had received these shares as a finder's fee in connection with the AEL-Dopp contract.

3. Docket Item No. 72.

## II. *Dopp's Motion To Amend.*

 The matter does not end with the disposition of Dopp's three pleaded defenses because Dopp has moved to amend his answer to assert a new Fourth and Fifth Affirmative Defense and a Counterclaim. These new affirmative defenses assert that whether or not the representations and warranties made by AEL to Butler in the AEL-Butler contract were incorporated by reference in the AEL-Dopp contract, Dopp relied upon such representations and warranties in entering the latter contract, that AEL knew, or should have known of such reliance, and that by virtue of the alleged falsity of such representations, AEL violated § 10(b) of the Securities Exchange Act of 1934 ("the Act"), and Rule 10b–5 promulgated thereunder, causing the said contract to be unenforceable by AEL and void under § 29 of the Act.

AEL opposes the motion to amend. First, AEL argues that the facts before the Court show that Dopp knew that material misrepresentations as to Mooney had been made, yet by his actions in ratifying and extending the AEL-Dopp contract several times on subsequent occasions, he waived his right to disaffirm or rescind the contract and is now estopped from asserting the defense of fraud and misrepresentation.

The Court, however, is unable to conclude on the present record that Dopp is either estopped or has waived the defense he wishes to assert in the amended answer. The evidence which appears in the record does not make it clear beyond all dispute that Dopp's defenses are invalid. A determination of these issues must await trial.

The Court will permit Dopp to file his amended answer to assert the proposed Fourth Affirmative Defense, the Fifth Affirmative Defense and the Counterclaim, and the case should proceed promptly to trial.

An order will be entered in accordance with this opinion.