**BECK v. CLARK, Attorney General.**
Civ. No. 1596.

United States District Court
D. Connecticut.
March 30, 1949.

Hobart S. Bird, New York City, R. J. Safarik, New York City, for plaintiff.

Harold Ungar, George B. Searls, U. S. Dept. of Justice, Washington, D. C., Adrian W. Maher, U. S. Atty., Thos. J. Birmingham, Asst. U. S. Atty., for defendant.

SMITH, District Judge.

This is an action, under the Trading With the Enemy Act, § 9(a), 50 U.S.C.A. Appendix, § 9(a), brought by the plaintiff, former record-owner of two hundred shares of common stock in an American corporation, against the defendant as successor to the Alien Property Custodian, to set aside a vesting order vesting the shares in the Custodian on a finding that the transfer of the shares, signed December 31, 1939 and delivered January 18, 1940, from a German national to the plaintiff was a cloaking transaction to protect the shares from seizure in the event of war between the United States and Germany.

The Custodian found that the beneficial interest remained in A. G. F. M., a German corporation, as whose nominee the transferor had held the shares.

There is little dispute as to the substantive law. A sale of stock by a foreign national to an American citizen in contemplation of war is not invalid if absolute and without reservation or right to retransfer, open or secret.

If the transfer is colorable or a sham concealing a continued equitable interest or right to retransfer in the seller, the stock may be seized and the property in it vested as that of the enemy national upon the outbreak of war.

The defendant relies largely upon what he considers evidence of concerted attempts to conceal three types of assets held by the German corporation in the United States: (1) the stock in the American company by sale to plaintiff at a nominal price, $200.00; (2) a patent for scissors, controlled by the German corporation, sold to plaintiff's son for $1,000.00,—also a

nominal price; (3) the debt of the American corporation to the German corporation of an amount in excess of $100,000.00 which the plaintiff suggested should also be transferred to the son.

The debt of the American company to the German parent company represented the major part of the American company's liabilities. If enforced, it results in a book insolvency to the extent of about $31,000.00.

There is little, if any, direct evidence of cloaking in the final terms of the sale of the stock, but the course of dealing leading up to it makes the purpose obvious.

For protection from seizure, plaintiff desired the German concern to transfer title to all three or to transfer title to stock and patent and cancel the debt. The Germans, however, either unwilling to depend entirely on the good faith of plaintiff or for the purpose of satisfying the German government, transferred stock and patent for nominal amounts but failed to transfer or forgive the debt, retaining thereby effective control over the American debtor, not realizing that the American government would seize the instrument of that control by vesting the debt.

Plaintiff's whole case hangs on two claims of fact, the bona fides of the stock transaction and the forgiveness of the debt. The first is, of course, of little use without the second.

The major basis of the claim for forgiveness is the reference in the letter of June 3, 1939 to a writing-off by the German parent company of RM 295,000 of the debt of the American company.

It is plain from the other evidence, however, that the write-off was merely intended to reflect the portion of the debt expected to be uncollectable on the basis of the subsidiary's history. Plaintiff had no illusions about this at the time, as shown by the failure to show any forgiveness of the debt on the books of the subsidiary, as well as by the reference to the debt in Scheerer's letter of November 6, 1939 (Plaintiff's Exhibit B) and plaintiff's radiograms of December 1, 1939 (Plaintiff's Exhibit F) and December 20, 1939 (Plaintiff's Exhibit H).

Had the debt been extinguished, there would have been a substantial book value to the shares and the $200.00 price would have been convincing proof of plaintiff's knowledge that there was a sham sale, a cloaking transaction.

The books of the parent company (Exhibit A on the second deposition of Scheerer) show, not a single write-down to accord with plaintiff's present theory (of a review and adjustment of prices charged in the past upon turning the subsidiary over to the plaintiff), but a number of write-downs from 1932 on to reflect uncollectability and subsequent write-ups to reflect an excess of payments in 1940 and 1941 by the debtor over debits for purchases in that year from the creditor and interest charges on the old debt, which excess of payments was applied to the old debt.

It may be possible that the plaintiff is honestly convinced at this time that he had no intention of retransferring the stock at the time of the sale, and, moreover, that he is likewise now convinced that he believed in 1939 that the debt was extinguished.

The overwhelming evidence to the contrary requires a finding that he is mistaken in both respects, however, and that he was, eight to ten years ago, a willing participant in the conspiracy. The passage of time and the pressure of interest have, not unnaturally, affected memory.

Even if his memory were correct as to his own state of mind, however, it could avail him nothing, for Scheerer's correspondence and actions leave no doubt that he intended a cloaking transaction as to the stock held by him in trust for the German corporation, and that he intended the debt to remain alive. The sales were not, as to Scheerer and A. G. F. M., absolute, and plaintiff could not reasonably have so considered them.

We have Scheerer's insistence on the right to repurchase, reiterated in the last communication received by the plaintiff before the $200.00 offer, the similar transaction with regard to the patent, the suggestion by the plaintiff of the sale of the debt to the plaintiff's son who did not have

sufficient funds to pay any reasonable value for it, the disappearance of some of the correspondence coupled with the plaintiff's warnings to his nephew Scheerer of the dangers of making records that would be available to the American government later.

There is no question but that there was a common purpose to conceal assets of A. G. F. M. There is no reasonable possibility that it did not include all three types.

The value of the patent was approximately $20,000.00. Its sale price was $1,000.00, which was less than the amount realized from the patent in the three months prior to its purported sale. The value of the stock is not established. Book value was nil because of the debt to A. G. F. M., aside from which its book value would have been in excess of $80,000.00.

The plaintiff has the burden of proof. He denies intent to conceal. That denial is overcome by the other circumstances of the case. Proof of the patent transfer for a nominal amount, with the purpose to cloak plainly declared, is proof of another similar transaction throwing light on the motive and intent in the transfer of the stock. Moreover, it demonstrates that both transactions are part of a single plan to evade the expected vesting of A. G. F. M. assets, as had happened once in the history of the firm in the first World War. The declarations of Scheerer to the German authorities were more than mere narrative, were meant to aid in the carrying out of the plan, and are admissible against the plaintiff as a co-conspirator.

The plaintiff can succeed here only by barring from consideration all the evidence except that relating solely and directly to the stock sale. For that he relies on the Standard Oil case. Standard Oil Co. of New Jersey et al. v. Markham, Alien Property Custodian, D.C.S.D.N.Y. 1945, 64 F.Supp. 656, affirmed as modified, 2 Cir., 1947, 163 F.2d 917. But that case does not go so far as to hold that other contemporaneous transactions may not be considered for what light they may throw on intent, but, at most, that on the facts of that case the evidence does not require a finding that all of a series of transactions were done with a cloaking intent because some of them were shown to have been done with such an intent. Moreover, even absent the patent transaction, an inference against the plaintiff must be drawn re his intent on the stock transaction because of the absence of some of the letters on the subject written by him, accustomed as he was to the careful preservation of correspondence in the German business tradition.

Judgment may be entered for the defendant, dismissing the complaint.