Jonathan HOLDEEN, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 41, Docket 26973.

United States Court of Appeals Second Circuit.

Argued Nov. 17, 1961.

Decided Jan. 10, 1962.

Willis Sargent, Syracuse, N. Y. (Allan E. Rappleyea, Poughkeepsie, N. Y., and

Jonathan Holdeen, Pine Plains, N. Y., on the brief), for plaintiff-appellant.

Arthur I. Gould, Atty., Dept. of Justice, Washington, D. C. (Abbott M. Sellers, Acting Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attorneys, Dept. of Justice, Washington, D. C., and Robert M. Morgenthau, U. S. Atty., So. Dist. of New York, New York City, on the brief), for defendant-appellee.

Before MOORE, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

■ This is the third appeal taken by taxpayer from adverse District Court judgments in tax refund cases involving the taxability of trust income to taxpayer individually under the Clifford doctrine (Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788 (1940)) because of retention of incidents of ownership in trust assets by the taxpayer as settlor. See Holdeen v. Ratterree, 270 F.2d 701 (2 Cir. 1959), 292 F.2d 338 (2 Cir. 1961), based on payments of assessments on 1945 income. The instant appeal is from a judgment on a jury verdict denying refund to taxpayer for taxes paid on 1946 income of six trusts, referred to as I, II, MacPherson-Sanford, Naylor-Sanford, 45-10 and 46-10. We hold that the uncontroverted evidence establishes that the sole dominion or control retained or exercised over trusts 45-10 and 46-10 was the furnishing of investment advice to the trustees, which we held in the companion case, 270 F.2d 701, insufficient to constitute substantial ownership. As to the income from those two trusts, the failure to direct a verdict for plaintiff is error. Taxpayer's contributions to these trusts in the tax year should also have been allowed as a charitable deduction. We hold, however, that there was no error in denial of the motion to direct a verdict as to the income from the other four trusts, the taxpayer having failed to sustain the burden of establishing a lack of sufficient evidence of retention of substantial ownership of the assets of the other four trusts.

The statute involved is Section 22 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 22:

"§ 22. Gross Income.

"(a) *General Definition.*—'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *"

*Interpretation of the section by the Treasury* is covered by Treasury Regulations 111 (1939 Code):

"Sec. 29.22(a)-21 [As added by T.D. 5488, 1946-1 Cum.Bull. 19, and as amended by T.D. 5567, 1947-2 Cum.Bull 9]. Trust Income Taxable to the Grantor as Substantial Owner Thereof.—(a) *Introduction.* —Income of a trust is taxable to the grantor under section 22(a) although not payable to the grantor himself and not to be applied in satisfaction of his legal obligations if he has retained a control of the trust so complete that he is still in practical effect the owner of its income. (Helvering v. Clifford, 309 U.S. 331 [60 S.Ct. 554, 84 L.Ed. 788].) In the absence of precise guides supplied by an appropriate regulation, the application of this principle to varying and diversified factual situations has led to considerable uncertainty and confusion. The provisions of this section accordingly resolve the present difficulties of application by defining and specifying those factors which demonstrate the retention by the grantor of such complete control of the trust that he is taxable on the

income therefrom under section 22 (a). Such factors are set forth in general in paragraph (b) and in detail in paragraphs (c), (d), and (e), below.

"(b) *In general.*—In conformity with the principle stated in paragraph (a) above, the income of a trust is attributable to the grantor (except where such income is taxable to the grantor's spouse or former spouse under section 22(k) or 171) if—

"(1) the corpus or the income therefrom will or may return after a relatively short term of years (see paragraph (c));

"(2) the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition (other than certain excepted powers), whether by revocation, alteration, or otherwise, exercisable by the grantor, or another person lacking a substantial adverse interest in such disposition, or both (see paragraph (d)); or

"(3) the corpus or the income therefrom is subject to administrative control, exercisable primarily for the benefit of the grantor (see paragraph (e)).

\*　　\*　　\*　　\*　　\*　　\*

"(d) *Power to determine or control beneficial enjoyment of income or corpus.*—Income of a trust is taxable to the grantor where, whatever the duration of the trust, the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition (except as provided in section 167(c) and as hereafter provided in subparagraphs (1) to (4), inclusive), whether by revocation, alteration, or otherwise, exercisable (in any capacity and regardless of whether such exercise is subject to a precedent giving of notice or is limited to some future date) by the grantor, or any person not having a substantial adverse interest in the beneficial enjoyment of the corpus or income, whichever is subject to the power, or both. The grantor is not taxable, however, if the power, whether exercisable with respect to corpus or income, may only affect the beneficial enjoyment of the income for a period commencing 10 years from the date of the transfer (or 15 years where any power of administration specified in paragraph (c) is exercisable solely by the grantor, or spouse living with the grantor and not having a substantial adverse interest or both, whether or not as trustee). For example, if a trust created on January 1, 1940 provides for the payment of income to the grantor's wife, and the grantor does not reserve any such administrative power but reserves the power to substitute other beneficiaries in lieu of his wife on or after January 1, 1950, the grantor is not taxable on the trust income for the period prior to January 1, 1950. But the income will be attributable to the grantor for the period beginning on such date unless the power is relinquished. \*　\*　\*

"(e) *Administrative control.*—Income of a trust, whatever its duration, is taxable to the grantor whereunder the terms of the trust or the circumstances attendant on its operation, administrative control is exercisable primarily for the benefit of the grantor rather than the beneficiaries of the trust. Administrative control is exercisable primarily for the benefit of the grantor where—

"(1) a power exercisable by the grantor, or any person not having a substantial adverse interest in its exercise, or both, whether or not in the capacity of trustee, enables the grantor or any person to purchase, exchange or otherwise deal with or dispose of the corpus or the income therefrom for less than an adequate and full consideration in money or money's worth; or

"(2) a power exercisable by the grantor, or any person not having a substantial adverse interest in its exercise, or both, whether or not in the capacity of trustee, enables the grantor to borrow the corpus or income, directly or indirectly, without adequate interest in any case, or without adequate security except where a trustee (other than the grantor or spouse living with the grantor) is authorized under a general lending power to make loans without security to the grantor and other persons and corporations upon the same terms and conditions, or

"(3) the grantor has directly or indirectly borrowed the corpus or income and has not completely repaid the loan, including any interest, before the beginning of the taxable year; or

"(4) any one of the following powers of administration over the trust corpus or income is exercisable in a nonfiduciary capacity by the grantor, or any person not having a substantial adverse interest in its exercise, or both; a power to vote or direct the voting of stock or other securities, a power to control the investment of the trust funds either by directing investments or reinvestments or by vetoing proposed investments or reinvestments, and a power to reacquire the trust corpus by substituting other property of an equivalent value.

"If a power is exercisable by a person as trustee, it is presumed that the power is exercisable in a fiduciary capacity primarily in the interests of the beneficiaries. Such presumption may be rebutted only by clear and convincing proof that the power is not exercisable primarily in the interests of the beneficiaries. If a power is not exercisable by a person as trustee, the determination of whether such power is exercisable in a fiduciary or a nonfiduciary capacity depends on all the terms of the trust and the circumstances surrounding its creation and administration. For example, where the trust corpus consists of diversified stocks or securities of corporations the stock of which is not closely held and in which the holdings of the trust, either by themselves or in conjunction with the holdings of the grantor, are of no significance from the viewpoint of voting control, a power with respect to such stocks or securities held by a person who is not a trustee will be regarded as exercisable in a fiduciary capacity primarily in the interests of the beneficiaries. Where the trust corpus consists of stock or securities of a closely-held corporation, such a power may or may not, depending upon all the facts, be considered exercisable in a fiduciary capacity.

"The mere fact that a power exercisable by the trustee is described in broad language does not indicate that the trustee is authorized to purchase, exchange, or otherwise deal with or dispose of the trust property or income for less than an adequate and full consideration in money or money's worth, or is authorized to lend the trust property or income to the grantor without adequate interest. On the other hand, such authority may be indicated by the actual administration of the trust. * * * "

The Commissioner contends that control of investment activities alone is sufficient evidence of substantial ownership, relying on Littel v. Commissioner, 154 F.2d 922 (2 Cir. 1946); Edison v. Commissioner, 148 F.2d 810 (8 Cir. 1945); and Commissioner of Internal Revenue v. Buck, 120 F.2d 775 (2 Cir. 1941). The cited cases do not support the Commissioner's contention.

Commissioner of Internal Revenue v. Buck, supra, at 777, holds that ownership for tax purposes is not an inflexible term and all circumstances are rele-

vant. The significant factors were outlined by the court as follows:

"That the donees are members of the donor's family, of which he is the head [wife for her life and then to children or their descendants] that he has 'income in excess of normal needs'; *that, during his life, he is unrestricted as to the disposition of any part of the corpus or income,* excepting that he may not divert any portion to his personal use; that while he lives, he has entire control of the management of the corpus, and, at his pleasure, may remove a trustee and appoint another."

It appears that in the Buck case it was the ability, or power, to sprinkle the income among many beneficiaries that was decisive. So too in Edison v. Commissioner, supra, it was the power to pay to each beneficiary as little or as much as the grantor wished, out of corpus as well as income, in combination with unfettered control over the investments which resulted in the income being taxed to the donor.

Finally, Littel v. Commissioner, supra, espoused no such principle as the appellee urges upon this court. In that case this court held that the power to modify the terms of the trust so as to retain the power to "give or withhold money" coupled with the uninhibited power to manage the trust was a retention of such a substantial portion of those rights which in total comprise economic ownership, that the income should for income tax purposes be considered that of the grantor.

In order for the income to be taxed as that of the grantor there must be some economic benefit to him. The term "economic benefit" of course includes not only income, or a possibility thereof, but also loans on an advantageous basis, power to decide who shall be enriched and who shall go without, discharge of obligations of the grantor, etc. Although management alone is not sufficient, when this is coupled with the

power to sprinkle the benefits among a class it would seem proper to tax the income as that of the grantor who earned it and who has substantially as much control or practical use of it as if it were entirely his own. Littel v. Commissioner, supra.

We adhere to our recent holding (Holdeen v. Ratterree, 270 F.2d 701, 2 Cir. 1959) that proof of control of investment activities, without more, is insufficient to support a finding of substantial ownership. This requires a reversal of the judgment as to trusts 46–10 and 45–10. No rights in them were retained by the taxpayer. None of the beneficiaries were members of his family. No economic benefit, direct or indirect, was received by Holdeen from these trusts. As to trusts 46–10 and 45–10, since the uncontroverted evidence established that there was no element of control in Holdeen other than the investment advice, a verdict should have been directed for the taxpayer.

There was, however, evidence from which the jury could find a retention of control of the corpus of each of Trusts I, II, Naylor-Sanford and MacPherson-Sanford. As to Trusts I and II taxpayer had reserved rights to change beneficiaries; as to I he owned interests in the Textile Co. in which Trust I purchased (inferably on his advice) stock or bonds. As to Naylor-Sanford and MacPherson-Sanford he relinquished in 1945 his reserved powers. However, there is evidence that he "drained their funds" in 1946 (Ex. M). The jury was not required to credit the explanation of Exhibit M made on behalf of the taxpayer. While the record of activities in connection with these trusts might be clearer, we cannot say that the conclusion of the jury that taxpayer had not borne the burden of convincing the jury of the incorrectness of the Commissioner's finding of retention of control as to these four trusts was without support in the evidence.

Aside from the failure to direct a verdict on trusts 46–10 and 45–10, the

charge of the court was without reversible error.

The principal attack on the charge is on the instruction to the effect that actual or practical power in a grantor to cause purchases and sales of securities by a trustee would be one of the factors in determining whether the grantor would be considered as substantially the owner of the trust property for income tax purposes. There was no error in this instruction. While we have held that investment direction alone is insufficient to bring the trust income within the Clifford doctrine, such direction so exercised as to bring about an economic benefit to the grantor, rather than solely to the trust, would amount to substantial ownership.

Appellant also claims error in admission of evidence as to the conduct of the trusts for years other than the tax year in question. Since one of the issues was the retention of actual control the course of conduct of grantor and trustees over a period of time was plainly admissible to establish the interpretation in practice of grantor's powers by the ostensible holders of title to the trust assets, to measure the practical retention of control of the corpus of a particular trust for the grantor's economic benefit, whether or not such practical ownership was exercised within the tax year in question. The ruling was correct. Richardson v. Smith, 102 F.2d 697, 125 A.L.R. 774 (2 Cir. 1939); Beck v. Clark, 88 F.Supp. 565 (D.Conn.1949), aff. Beck v. McGrath, 182 F.2d 315 (2 Cir. 1950).

A verdict should have been directed for the taxpayer as to the income from trusts 45–10 and 46–10. It follows also from the rulings above as to trusts 45–10 and 46–10 that taxpayer was entitled to a deduction from his 1946 taxable income of the amount of his 1946 charitable contributions to trusts 45–10 and 46–10.

Reversed in part and remanded for further proceedings in accordance with this opinion.