**Holdeen Trust**

*Daniel B. Michie, Jr., Joseph L. Loughran, Frank G. Opton* and *Robert Kruger,* for the Unitarian Universalist Association, respondent.

*Joanne R. Denworth* and *Cuthbert H. Latta,* for Janet Adams, trustee, contra.

*W. William Anderson* and *Richard J. Orloski,* Deputy Attorneys General, for the Department of Justice, Commonwealth of Pennsylvania, contra.

*Robert E. J. Curran* and *Carmen C. Nasuti,* Assistant United States Attorneys, for the United States of America, and Commissioner of Internal Revenue.

## SUR PRELIMINARY OBJECTIONS
## TO PETITIONS

LEFEVER, J., November 20, 1972.—The sole issue raised by these preliminary objections is the jurisdiction of this court to decide the questions flowing from the petitions for declaratory judgment and the petitions for the reformation of the trust instruments.

Jonathan Holdeen, settlor, was born on September 16, 1881, and died on June 14, 1967. Settlor lived in New York State throughout most of his life. He was a resident of that State when he executed the various trust instruments before this court and at the time of his death. He was a successful lawyer and businessman. Apparently, he was the draftsman of his will and the various trust instruments at issue. He was a great admirer of Benjamin Franklin. From early youth he was intrigued with the fantastic growth of capital which results from the accumulation of income in long-term trusts, the idea initiated in Franklin's will

by creation of his 200-year trusts for Pennsylvania and Massachusetts, respectively.[1]

The instant trust, hereinafter called "Trust 45-10," and 16 other long-term trusts presently before this court were created by settlor to test and establish the wisdom of such accumulations. All of these trusts have similar schemes of disposition, viz. distribution of a portion of the current income to a charity, accumulation of the balance of the income for periods of 500 to 1,000 years, and ultimate distribution of all principal and accumulated income to the Commonwealth of Pennsylvania for specified charitable purposes.[2] In some of the trusts the charitable scheme does not be-

---

[1] Settlor's views are cogently set forth in (a) his article, "Should Thrift be Nationalized," published in 1912; (b) "Protest of Franklin Defense Committee Against Legislative Expropriation," published by him as the Franklin Defense Committee; and (c) his dissertation on this subject contained in his will. By way of illustration, Paragraph Fifth of his will states, inter alia: ". . . By the example of the accumulation of the funds of said 'Holden Foundation,' to call to the attention of the various governments of the world, the advisability of the adoption by said governments of a system under which they shall create or receive funds which shall be invested in productive investments and the income of which funds shall be wholly or partly accumulated until the amount of such funds shall be large enough so that the income thereof will pay all governmental expenses, general and local, to the end that taxation may be discontinued, and so that the world's stock of capital may be enlarged to such an extent that the prevailing market interest rate or net rent of money or property shall not exceed one per cent per year upon the amount of such money or the value of such property . . . If a compound interest table is consulted, it will be observed that one dollar, kept invested at four percent interest for a century becomes 50 dollars and in 235 years becomes 10000 dollars. A short computation will demonstrate that if a single cent could be kept invested at four per cent interest for 1000 years it would become a thousand trillion dollars . . ."

[2] During his lifetime, settlor created a total of 186 trusts. Only 17 of these trusts are involved in the present litigation.

come operative until the expiration of the lives of members of settlor's family, during whose lives income is payable to them.

Trust "45-10" was created in New York by agreement of trust, dated June 2, 1945, between settlor and the trustees, all of whom were residents of New York. By that agreement settlor transferred certain assets to his daughter, Janet Adams and his son, Randal Holden, as trustees. The essential dispositive provisions of the trust agreement are:

1. That the trustees shall annually pay "expendable income," calculated by multiplying 1/500ths part of the income by the number of years which have elapsed since the beginning of the trust, to the American Unitarian Association (now the Unitarian Universalist Association), of Boston, Massachusetts, "for endowment or other use in aid of maternity, child welfare, and maintenance and migration expenses of natives of India and their descendants," or else to "such other corporations, funds, or foundations organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes as said American Unitarian Association or its successor may designate";

2. That the remainder of the income in each year shall be accumulated, except that the trustees shall also pay to the American Unitarian Association "all other net income which is not lawfully subject to accumulation"; and

3. That in the year 2444 the trust shall terminate and all principal and accumulated income shall be distributed to the Commonwealth of Pennsylvania for educational endowment or other public purposes.

Paragraph 4 of Trust "45-10" is critical. It provides:

"The property and assets subject to this agreement shall be held by the trustees hereunder *at Easton or*

*elsewhere in the State of Pennsylvania* or in the Commonwealth of Massachusetts and the trust estate hereby created shall there be administered. This instrument shall be deemed made under and with reference to and *shall be subject to the laws of Pennsylvania and to regulation and control by it.*"[3] (Italics supplied.)

The provisions with respect to administration of the trusts in Pennsylvania were not carried out by the trustees during settlor's lifetime and there can be no doubt that he was aware of this. The trust administration was, and still is, conducted in main from settlor's former law office in Pine Plains, New York, by Mrs. Janet Adams, the managing trustee of all the Holdeen trusts. She employs a staff in that office.

[3] The provisions of the other six trusts, in which Unitarian Universalist Association has an actual or possible interest, are quite similar to, and raise the same questions as, those in the instant case.

Trust "46-10" was established by settlor on September 10, 1946, and is captioned no. 2247 of 1971. Its basic provisions are identical with the instant trust.

Trust "47-10" was established by settlor on April 22, 1947, and is captioned no. 2248 of 1971. Its basic provisions are identical with the instant trust.

Trust "54-120" was established by settlor and his wife, Stella H. Holden, on May 20, 1954, and is captioned no. 2249 of 1971. It provides preceding life estates for members of settlor's family, and at the expiration of a specified period it merges the corpus into the balance of the "ten funds." Its other basic provisions are the same as those in the instant trust.

Trust "55-10" was established by settlor on June 3, 1955, and is captioned no. 2250 of 1971. It provides for preceding life estates. Its other basic provisions are the same as those in the instant trust, except that the period of accumulation is 1,000 years.

The "MacPherson-Sanford" Trust was established by settlor on November 22, 1940, and was amended on October 30, 1945. It is captioned no. 3319 of 1971. Both the original and the amended agreements created life estates for members of settlor's family.

In February 1971, the Unitarian Universalist Association filed suit against the trustees in the Supreme Court of Westchester County, New York, under the

---

The original agreement designated Hartwick College of Oneonta, New York, and the Commonwealth of Pennsylvania as successive charitable income beneficiaries, and the amended agreement substituted West Virginia Wesleyan College at Buckhannon, West Virginia, in place of Hartwick College. The original and the amended agreements both designated the Commonwealth of Pennsylvania as the charitable remainderman at the expiration of 1,000 years. The modified agreement designated Lafayette Trust Company of Easton, Pa., as substituted trustee and the amended agreement designated Somerset Trust Company of Somerset, Pa., as substituted trustee. The amended agreement gave to the trustee or trustees ". . . the right to modify the provisions hereof with respect to beneficiaries after said deaths by declaring that thereafter such portion of said income as such trustees specify shall be paid to American Unitarian Association of 25 Beacon Street, Boston, Massachusetts . . ." for charitable purposes. In all other respects, the basic facts are the same as those in the instant trust except that none of the assets of this trust have been brought into Pennsylvania.

The "Naylor-Sanford" Trust was established by settlor on November 23, 1940, and amended by instrument dated October 30, 1945. It is captioned no. 3320 of 1971. The provisions and the exceptions are similar to those in the "MacPherson-Sanford" Trust.

Ten other trusts created by settlor are also before this court, captioned respectively: Nos. 3316, 3317, 3318, 3321, 3322, 3323, 3324, 3325, 3326, and 3327 of 1971. The Unitarian Universalist Association has no interest whatsoever, actual or possible, in any of these trusts. The sole issue raised by the preliminary objections of the United States of America, with respect to these trusts, is the right of the United States of America to have the litigation dismissed as to it under the doctrine of sovereign immunity.

Securities valued at approximately $7,000,000, are presently in the possession of Girard Trust Bank, Philadelphia, Pa., as custodian. They constitute a portion of the corpus of the so-called "ten funds," namely, Trust "45-10," "46-10," "47-10," "54-120" and "55-10" in which Unitarian Universalist Association has an interest and "50-10" and "54-50" in which the association has no interest.

caption "Unitarian Universalist Association v. Janet Adams, Randal Holden and the Commonwealth of Pennsylvania, Index No. 1806/1971," alleging that the accumulation provision in the trusts is invalid, and requesting that all past accumulations of income, and all future income, be paid to the Unitarian Universalist Association. The Commonwealth of Pennsylvania challenged the jurisdiction of the New York court over its person; the trustees did not. The action is still pending; it is in the pretrial stage.

In September 1971, the trustees initiated the present litigation by filing five petitions for declaratory judgment in the five trusts that were the subject of the Unitarian Universalist Association's suit in New York. The relief prayed for was that the income-accumulation provisions of these trusts be declared valid. On December 31, 1971, the trustees filed petitions in 17 trusts, including the above-mentioned five trusts, seeking reformation or other relief appropriate under the Federal Tax Reform Act of 1969 and the Pennsylvania Charitable Instruments Act of 1971.

This court, per Administrative Judge Charles Klein, filed decrees, dated September 3, 1971, September 21, 1971, and December 31, 1971, which (1) authorized "the U.S.A., through its proper officers, and the Commissioner of Internal Revenue to appear as parties in interest . . ."; and (2) directed the issuance of citations to the United States of America, the Commissioner of Internal Revenue, the Unitarian Universalist Association, the Commonwealth of Pennsylvania, and the Attorney General of the Commonwealth, parens patriae, to show cause why this court should not grant a declaratory judgment as to the validity of the provision for the accumulation of income in the various trusts and why reformation or other relief should not be granted.

In due course, the United States of America and the Commissioner of Internal Revenue filed preliminary objections in the nature of a motion to dismiss all the petitions on the ground that the United States of America may not be sued without its consent under the doctrine of sovereign immunity.

On January 27, 1972, the Unitarian Universalist Association filed preliminary objections to both sets of petitions, challenging the jurisdiction of this court on the ground that the trust res was not then within the Commonwealth.

The Commonwealth of Pennsylvania filed an answer to the merits in which it joined in the petitioners-trustees' prayer that the provision for accumulation of income should be upheld as valid.

This trust and other trusts created by the settlor are the subject of litigation in the Tax Court of the United States. There, the Commissioner of Internal Revenue is seeking additional taxes from the trusts on the ground, among others, that the trusts are invalid. Simultaneously, the commissioner is claiming in other cases pending in the Tax Court of the United States that because the trusts are invalid the income from them for the years 1951 through 1958 is taxable to the settlor's estate.

Following oral argument before this court en banc upon the preliminary objections, the court entered orders, dated May 31, 1972, referring the 17 Holdeen trusts to the undersigned, as hearing judge, so as to afford the parties an opportunity to present evidence relevant to the question of jurisdiction. Hearings were held on September 25 and 26, 1972. Notice of these hearings was given to all parties, including the Lafayette Trust Bank of Easton, Pa., Somerset Trust Company, of Somerset, Pa., and the defunct First National Bank of Easton, Pa., each of which was designated as

successor trustee in one or more of the trust instruments. The Lafayette Trust Bank, by letter, stated it did *not* intend to participate in these proceedings; and a similar letter was written by Somerset Trust Company. The trustees, the Unitarian Universalist Association, the Commonwealth of Pennsylvania and the United States of America all appeared by counsel.

The questions at issue are whether this court has jurisdiction (1) to enter a declaratory judgment as to the validity of the provision for the long-term accumulation of income in these inter vivos trusts; and (2) to reform these trust instruments, or grant other relief, as may be required by the Charitable Instruments Act of June 17, 1971, 10 PS §201, et seq., and particularly section 205(2), which provides:

"After December 31, 1971, to every charitable organization created before January 1, 1970, unless a court of competent jurisdiction in a proceeding instituted before January 1, 1972, should explicitly decide that the operation of section 1 of this act [10 PS §201] would substantially impair the accomplishment of the purposes of the charitable organization involved in that proceeding."

Petitioners rely upon the jurisdictional base of the Orphans' Court Act of 1951, as amended,[4] viz.:

Section 301, 20 PS §2080.301: "Exclusive jurisdiction. The orphans' court shall have exclusive jurisdiction of: . . .

"(3) Inter vivos trusts. The reformation or setting aside of any such trusts, whether created before or after the effective date of this act, except any inter vivos trust created before the effective date of this act, jurisdiction of which already has been acquired by another Pennsylvania court. Another court which has

---

[4] See Probate, Estates and Fiduciary Code, section 711.

acquired jurisdiction of the trust may transfer it to the orphans' court . . ."

The Unitarian Universalist Association contends that the quoted statute is insufficient to give this court jurisdiction because the trust res (contrary to the terms of the trust instrument), was continuously held and administered in the State of New York prior to the date of filing this action, and since the res was not physically present in Pennsylvania, this court has no jurisdiction over the subject matter.

It is sufficient that settlor specifically provided in the trust instruments that the trusts were to be administered in Pennsylvania (or Massachusetts). By so providing, settlor, in effect, directed that the "situs" of the trust be in Pennsylvania (or Massachusetts), because the term "situs," under principles of conflict of laws, refers not to the location of the trust property, but to the State in which the settlor has directed that the trust be administered. See V Scott, Trusts, §555, page 3777 (3rd ed., 1967).

Under modern precepts of conflict of laws, the court having jurisdiction to administer a trust and the governing law to be applied in that administration are primarily matters of settlor's intent. As Professor Scott well states, at page 3777,

"Whether the trust is created by will or inter vivos, of the first importance is the intention of the settlor if it can be ascertained from the language of the trust instrument as interpreted in the light of all the circumstances. His intention, if it can be ascertained, will be controlling, unless to carry it out violates the public policy of a state having contacts with the trust which as to a particular issue should control. As to all matters with which no question of validity is concerned and which are therefore within the control of the settlor, his intention if properly manifested is

determinative. Not only may he dictate the results to be·reached, but he can designate the law of any state which he wishes to be applicable. . ."

In the introductory note to the trusts' section of the Restatement 2d, Conflict of Laws (1971), vol. 2, page 131, it is said:

". . . The chief purpose in making decisions as to the applicable law is to carry out the intention of the creator of the trust in the disposal of the trust property . . ."

The Restatement 2d, Conflict of Laws, which deals with the question of what court has jurisdiction to administer a trust and what law will apply to administration, lays down these general rules:

"Section 267. Court Supervision of Administration.

"The administration of a trust of interests in movables is usually supervised by the court, if any, in which the trustee has qualified as trustee or by the courts of the state in which the trust is to be administered."

"Section 272. Administration of Trust of Movables Created Inter Vivos.

"The administration of an inter vivos trust of interests in movables is governed as to matters which can be controlled by the terms of the trust

"(a) by the local law of the state designated by the settlor to govern the administration of the trust . . ."

It is noteworthy that no account has been filed in any court by the trustees of the instant trusts. In short, these trusts have thus far been administered without the supervision of any court. However, the trustees early in 1972 elected to bring the trusts to Pennsylvania in order to carry out settlor's intention that they be administered in Pennsylvania and governed by Pennsylvania law. There is now in the custody of Girard Trust Bank securities owned by these trusts of

an approximate value of $7,000,000. Although the trust agreements provide that they are to be administered in either Pennsylvania or Massachusetts, the choice of jurisdiction was left to the trustees. The trustees have chosen Pennsylvania. This is vital.

It is true that the trustees have been sued by the Unitarian Universalist Association in the Supreme Court of Westchester County, New York, and that they did not challenge its jurisdiction. However, their defense to that action did not estop them from carrying out settlor's intention that the trust be administered in Pennsylvania; neither did the filing of income tax returns in New York; nor did the filing of the proceedings in the Tax Court of the United States.[5] Furthermore, the recording of the trusts does not constitute an estoppel. Trust "44-10" was recorded in the Office of the County Clerk in Dutchess County, New York, on February 10, 1965; trust "45-10" was recorded in the same office on August 4, 1953; trust "54-120" was similarly recorded in 1954; and trust "55-10" was so recorded in 1956; finally, trust "47-10" was recorded in Kings County, New York, in 1951.

In Schoble's Petition, 43 D. & C. 459 (1942), the issue involved was the jurisdiction of this court over a separation agreement wherein husband assigned income from a Pennsylvania family trust to a Delaware trustee for the benefit of his wife, and later changed his mind and ordered the income to be paid to him from the Delaware trust. The former wife filed a petition with this court to remove the Delaware corporate trustee and to appoint a Pennsylvania cor-

---

[5] Tax appeals taken by settlor are reported as follows: Holdeen v. Ratterree, 270 F. 2d 701 (1959); Holdeen v. Ratterree, 292 F. 2d 338 (1961); and Holdeen v. United States of America, 297 F. 2d 886 (1962).

porate trustee in its place. The Delaware trustee personally appeared in this court and agreed that it should be replaced by a Pennsylvania corporate trustee. Husband argued that Pennsylvania was without subject matter jurisdiction to replace the Delaware trustee, even with its acquiescence, because the trust *res* was entirely in Delaware and was being administered by a Delaware trustee which was not doing business in Pennsylvania. In overruling husband's objections to the subject matter jurisdiction, Judge Ladner observed that the statute did not limit the orphans' court's jurisdiction to *inter vivos* trusts where the trust was created, where the *res* was administered, or where the parties live, but gives the orphans' court subject matter jurisdiction over *inter vivos* trusts, stating, at pages 464 and 465:

"The amendment of June 26, 1931, P. L. 1384, to section 9 of the Orphans' Court Act of June 7, 1917, P. L. 363, in express terms gives us jurisdiction of such trusts without any limitation or restriction in regard to the place where the trust was created, where it is administered, or where the parties live."

On appeal, the Pennsylvania Supreme Court observed that the personal appearance by the Delaware corporate trustee gave this court personal jurisdiction over the case; that the Orphans' Court Act of June 13, 1917, P. L. 363, 20 PS §2253a (repealed), gave the court subject matter jurisdiction over the res and, therefore, power to remove the Delaware corporate trustee, which was administering and holding the res in Delaware. The court stated in Schoble Trust Estate, at 346 Pa. 318, 325:

"The effect of its [the foreign trustee's] appearance was merely to give jurisdiction over the person. Jurisdiction over the subject matter came from the statute."

The facts in the instant case are far stronger than those in the cited case because our settlor clearly expressed his intention in the trust instrument that the assets of the trust were to be held in Pennsylvania and that the trust was to be governed by Pennsylvania law; the chief remainderman is the Commonwealth of Pennsylvania; substantial assets of the trust are presently in Pennsylvania; and lastly, and of paramount importance, the questions of the validity of the accumulation provision of the trust instruments and of the possible reformation thereof are questions of Pennsylvania law which Pennsylvania courts are best equipped to resolve.

In most cases in which a question of jurisdiction has been raised, the settlor has not specified the jurisdiction in which his trust was to be administered; hence, the court has been compelled to search for the settlor's intent from the terms of the trust instrument and the general circumstances surrounding the creation of the trust. Thus, for example, where assets have been transferred to a trust company of a particular State as trustee, this is an indication that the settlor intended the courts of that State to exercise jurisdiction over the administration of the trust, and the decision of that court is binding upon the courts of the State where decedent was domiciled: Morgan Guaranty Trust Co. v. Huntington, 149 Conn. 331, 179 A. 2d 604 (1962). See Lewis et al. v. Hanson et al., 36 Del. Ch. 235, 128 A. 2d 819 (1957), affirmed sub. nom., Hanson v. Denckla, 357 U. S. 235 (1958); Franklin Foundation v. Attorney General, 340 Mass. 197, 163 N. E. 2d 662 (1960); Wilmington Trust Co. v. Wilmington Trust Co., 26 Del. Ch. 397, 24 A. 2d 309 (1942); and Greenough v. Osgood, 235 Mass. 235, 126 N. E. 461 (1920).

Underlying the decisions in these cases is the recognition that settlor has the right to choose the jurisdic-

tion in which his trust is to be administered and that choice is not limited to the State in which the trustees or the assets are located. Thus, in Baltimore National Bank v. Central Public Utility Corporation, 26 Del. Ch. 295, 28 A. 2d 244 (1942), a Maryland trustee under a corporate indenture that had been executed in Illinois by a Delaware corporation brought suit in Delaware for a determination of its administrative powers under the indenture. Although the indenture did not specifically so state, the court held that the trust was made with reference to Maryland law and so was a "Maryland trust" over which the Maryland courts should exercise jurisdiction and the Delaware courts should not. The court stated at (26 Del. Ch.) pages 298 and 299:

"If the situs of the trust is in Maryland, this court cannot instruct the trustee as to its administrative powers and duties under the deed . . .

. . .

"But the location of personal property, delivered to and held by the trustee, is not necessarily the controlling question in determining the real situs of the trust. *That is ordinarily a question of intent,* in which other facts will, also, be considered." (Italics supplied.)

It is clear from the foregoing that the situs of the instant trusts is of critical importance in determining whether this court has jurisdiction. Petitioners urge that the situs is Philadelphia, Pa. Unitarian Universalist Association takes the position that at the commencement of this litigation the situs was in New York State because situs is the place where the trust administration is physically located and the trust has permanent ties of reality, and situs is not determined by abstract, ephemeral concepts or by phrases, pretenses and transitory devices. It urges that if settlor intended the situs of the trusts to be in Pennsylvania,

he would have appointed Pennsylvania residents as trustees and would have transferred the corpus to them in Pennsylvania. It cites section 724(a) of the Probate, Estates and Fiduciaries Code, Act of June 30, effective July 1, 1972, no. 164, which specifies:

"If the trust instrument expressly provides for the situs of the inter vivos trust, its situs shall be at the place within or without the Commonwealth which is in accord with such provision."

Admittedly, the trust instruments at issue do not, by express words, fix the situs of the trusts, but specific provisions strongly imply that Pennsylvania is the situs of the trust. However, consideration must be given to section 714 of the Probate, Estates and Fiduciaries Code, which specifies:

"Conflict of laws. Nothing in this chapter shall be construed to interfere with the rules of law applicable to the determination of the question whether Pennsylvania courts have jurisdiction of the subject matters enumerated in this chapter."

In inter vivos trusts, trustees qualify by (1) accepting office; (2) taking control of the trust assets; (3) entering upon the administration thereof; and (4) submitting to the jurisdiction of a court. In the instant case, the trustees reside in New York and they established bank and brokerage accounts there. Mrs. Adams, sole trustee in some of the trusts and co-trustee in the other trusts, maintains an office in Pine Plains, New York, where the records of the trust are kept and where she employs a staff for the administration of the trusts at bar as well as other Holdeen trusts. The trust deeds are recorded in appropriate public office of Dutchess County, New York. However, as pointed out above, the trustees have never filed an account in a New York court; they have never instituted litigation in the New York courts; and they have never fully

submitted their persons to the jurisdiction of the New York courts. Moreover, settlor in his trust instruments clearly expressed his intention that Pennsylvania law was to govern and he directed the trustees to submit to the jurisdiction of Pennsylvania or Massachusetts.

In Wilmington Trust Co. v. Wilmington Trust Co., 26 Del. Ch. 397, 24 A. 2d 309 (1942), the conflict of laws problems involved in the instant case and the proper approach thereto is well stated by Chief Justice Layton at (26 Del. Ch.) pages 405 and 406:

"The diversity of judicial opinion with respect to the discovery of the jurisdiction under whose law the validity of a trust inter vivos of intangible personal property is to be determined is such that no useful purpose will be served by an attempted analysis of the decisions. Courts have variously looked to the domicile of the donor, the place of execution of the trust instrument, the situs of the trust property, the place of administration of the trust, the domicile of the trustee, the domicile of the beneficiaries, and to the intent or desire of the donor, or to a combination of some of these denominators, in deciding the troublesome question of conflict of law. In the case of a testamentary trust of personalty it is very generally held that the law of the testator's domicile is the governing law. In some jurisdictions the same rule is applied in the case of a living trust of personal property. Modern methods of transportation with a resulting change of business economy have tended, however, to obliterate state lines and to depreciate the importance of particular localities. The place of one's residence no longer is a sure indication of one's place of business; nor is the ownership of property closely tied to residence. The domicile of the donor is, of course, a circumstance to be considered in the ascertainment of the seat of the trust, but courts, today, are not so much inclined to

the uncompromising pursuit of abstract doctrine. They are disposed to take a more realistic and practical view of the problem; and the donor's domicile is no longer regarded as the decisive factor. The place of execution of the trust instrument and the domicile of the beneficiaries are not important indicia. The domicile of the trustee and the place of administration of the trust—quite generally the same place—are important factors; and the *intent of the donor, if it can be ascertained, has been increasingly emphasized* . . ." (Italics supplied.)

In Newbold Estate, 28 D. & C. 2d 92, 95, 12 Fiduc. Rep. 547, 549 (1962), our colleague, Judge Shoyer, stated:

"The difficulties encountered by the official examiners appointed by this court in making examination of trust assets in the hands of out-of-State trustees, especially individual trustees, make it desirable from an administrative standpoint to remove the situs to the court which has assumed jurisdiction over the trustees."

In Jadwin Trust, 45 D. & C. 2d 418, 419, 18 Fiduc. Rep. 445, 447 (Montgomery Co. O. C., 1968), President Judge Taxis observed that:

". . . 'situs' appears essentially to mean *jurisdiction, that is,* the location at which the active trust administration takes place."

The custody account in Philadelphia is important. True, it was not in existence when the pending petitions were filed. However, it was established in response to Unitarian Universalist Association's challenge to the jurisdiction of this court. Moreover, the establishment of the custody account in Philadelphia places this court in a better position to give directions to, and maintain control over, the trustees. Furthermore, by filing these petitions, the trustees have fully

submitted their persons to the jurisdiction of this court in the pending litigation.

It follows that this court has jurisdiction over the trusts and has power to enter a binding judgment, in view of (1) the clear direction of settlor in the trust instruments; and (2) the voluntary presence of the trustees in this court as a result of the filing of the petitions presently before it. See Mullane v. Central Hanover Bank & Trust Co., 339 U. S. 306 (1950).

When the administration of a trust is fixed in a particular State, the appropriate court of that State has jurisdiction over all questions arising in the course of administration even though the trust property is not within the boundaries of the State. See Cronin's Case, 326 Pa. 343, 349 and 350 (1937), where Mr. Justice Linn, quoting from section 298 of Restatement, Conflict of Laws, stated:

" '. . . A testamentary trust of movables is administered by the trustee according to the law of the state of the testator's domicil at the time of his death *unless the will shows an intention that the trust should be administered in another state,*' as affected by comment (c) which states that 'If the testator appoints as trustee a trust company of another state, presumptively his intention is that the trust should be administered in the latter state; the trust will, therefore, be administered according to the law of the latter state.' " (Italics supplied.)

Of course, settlor could not validly have chosen Pennsylvania as the place of administration of this trust if his choice would have violated the public policy of New York, because New York was settlor's domicile and the trust res was located there for many years: Restatement 2d, Conflict of Laws, section 272 and comment b to section 271. However, the New York cases indicate clearly that settlor's choice was not of-

fensive to New York public policy: Shannon v. Irving Trust Co., 275 N. Y. 95, 9 N. E. 2d 792 (1937); and Application of New York Trust Co., 195 Misc. 598, 87 N.Y.S. 2d 787 (1949).

In the latter case, a New York settlor created an inter vivos trust and delivered the assets to the New York trustees, an individual and a corporation. The beneficiary was a California resident who had been appointed individual trustee upon the resignation of the individual New York trustee. Upon the resignation of the New York corporate trustee the beneficiary sought to have a California corporate trustee appointed and to have the trust transferred to California for administration. The New York court so directed, holding that the trust gave the beneficiary authority to appoint the trustees and that nothing prevented him from appointing a California trustee. The court held further that the transfer of situs did not offend New York's public policy, stating, at page 792:

"It cannot be doubted, therefore, that this state encourages the selection by residents of other states of New York as the situs of trusts. It is inconceivable that a state committed to this policy would deny its own residents the corresponding right to establish trusts in other states. In my opinion, under the law of this state, a New York resident may choose another state as the situs of the trust as freely as a nonresident may create a trust in New York."

Comity might persuade this court to refrain from exercising its jurisdiction in the instant cases, because of the pending action in the court of Westchester County, New York. Many cases note the doctrine that a court will refrain from exercising its jurisdiction when a trust is being administered in another State, often called the State of "primary supervision," and the question raised would be affected by or is pre-

cluded by that administration. Thus, in Estate of Shipman, 179 Misc. 303, 40 N.Y.S. 2d 373 (1942), the New York court held that it would not exercise jurisdiction in a suit by a New York beneficiary for construction of a New York will creating a testamentary trust that had, pursuant to testator's instructions, been transferred to a Massachusetts trustee and had been administered for years in Massachusetts, during which time many accounts had been filed and audited by the Massachusetts courts. Similarly, in Schuster v. Superior Court, 98 Cal. App. 619, 277 Pac. 509 (1929), where a trust, created by the will of an Arizona decedent was being administered in Arizona, the California court refused to exercise jurisdiction in a suit by the beneficiaries for an accounting. Likewise, in Cronin's Case, 326 Pa. 343 (1937), our Supreme Court, applying "principles of comity," stayed action, pending completion of an accounting in New York, on a claim against a trust under the will of a New York decedent even though the trustee was a Pennsylvania trust company and the trust assets were located in Pennsylvania. See also Marsh v. Marsh, Executors, 73 N. J. Eq. 99, 67 Atl. 706 (1907).

Strong argument may be made that the New York courts should defer to the Pennsylvania courts in the instant litigation because the crucial point at issue, i.e., the validity of the accumulation provision, is by the terms of the trust agreement to be governed by Pennsylvania law. This will involve interpretation of section 6106 of the Probate, Estates and Fiduciaries Code in the light of cases interpreting that statute (e. g. James Estate, 414 Pa. 80 (1964).

In Staley v. Safe Deposit & Trust Co. of Baltimore, 189 Md. 447, 56 A. 2d 144 (1947), a Maryland court was asked to interpret a trust agreement between an Illinois settlor and two trustees, one of whom was a

Baltimore trust company. The assets of the trust were held by the trustees in Baltimore. Both sides agreed that the question of interpretation, whether "children" included adopted children, was governed by Illinois law; both sides urged the Maryland court to take jurisdiction and apply the Illinois law. The court indicated great doubt that it had jurisdiction, but, in any event, it declined to accept jurisdiction on the ground that the Illinois law was in doubt and that the doubt should be resolved by the Illinois courts, not Maryland's, stating (189 Md.), at page 459 (56 A. 2d), at page 150:

". . . If any of these [appellants'] contentions are sound and pertinent (which we do not suggest), it is obviously fitting that the Supreme Court of Illinois, whenever occasion may arise, interpret its own decision in the Belfield case; if we should approve (or disapprove) these contentions, that court may hereafter hold that we had 'misunderstood' and misapplied the Belfield case."

Another persuasive reason for the New York courts to defer to the Pennsylvania courts, is that the Commonwealth of Pennsylvania, as remainderman of the trusts, is an essential party to these proceedings. However, because of its sovereign immunity as a State, it cannot be sued, without its consent, in the courts of New York, or any other State, including Pennsylvania: State of Missouri v. Hall, 389 S. W. 2d 798 (1965). In the cited case, the beneficiaries under a will were denied the right to attack a codicil of doubtful validity because the State of Missouri was the beneficiary under the codicil and it refused to submit to the jurisdiction of the court before which the contest was brought. In the instant case, the Commonwealth of Pennsylvania in its answer in the New York cases asserted that the New York courts did not have jurisdiction over the person of the Commonwealth; how-

ever, the Commonwealth has entered an appearance and has actively participated in the present proceedings.

However, the question of comity is not now before this court. The sole issue presently before us is one of jurisdiction. We will decide the question of comity after the New York court has proceeded with the case before it to final decision, or has dismissed the case upon the jurisdictional question, or has stayed proceedings because of our present decision.

We turn now to the question of venue. Venue of proceedings involving inter vivos trusts is governed by the Probate, Estates and Fiduciaries Code, which provides, inter alia, as follows:

"§722. Venue of trust estates.

"When a Pennsylvania court has jurisdiction of any trust, testamentary or inter vivos, except as otherwise provided by law, the venue for all purposes shall be in the county where at the time being is the situs of the trust . . ."

"§724. Situs of inter vivos trust.

"(a) . . . If the trust instrument expressly provides for the situs of the inter vivos trust, its situs shall be at the place within or without the Commonwealth which is in accord with such provision."

Paragraph Fourth of the instant deed of trust provides:

"The property and assets subject to this agreement shall be held by the trustees hereunder at Easton *or elsewhere in the State of Pennsylvania* or in the Commonwealth of Massachusetts and the trust estate hereby created shall there be administered. This instrument shall be deemed made under and with reference to and shall be subject to the laws of Pennsylvania and to regulation and control by it." (Italics supplied.)

By this provision, the trustees were authorized to

choose whether the situs of the trust should be in Massachusetts or in Pennsylvania; and in the event of their selection of Pennsylvania, they were further authorized to decide precisely where the situs should be, namely, "at Easton or elsewhere in the Commonwealth of Pennsylvania." By filing the pending petitions in this court, the trustees have exercised their discretion by first choosing Pennsylvania over Massachusetts and then picking Philadelphia County as the precise place in Pennsylvania where the trust was to have its situs. This choice, having been made pursuant to an express provision of the agreement of trust, has the same effect as if it had been made by settlor himself. Furthermore, approximately $7,000,000 of the trust corpus, in the form of stocks and bonds are now located in Philadelphia, in possession of Girard Trust Company. Accordingly, the situs is now fixed in Philadelphia County pursuant to a provision of the trust instrument and, therefore, under section 722 of the code, the proper venue for all litigation is Philadelphia County.

Furthermore, Philadelphia County would be the proper venue, even if the situs of the trust had not been fixed there by the provisions of the trust agreement, under section 724(b) of the Probate, Estates and Fiduciaries Code, which provides that if the trust instrument "does not expressly provide for the situs" of the trust and if the settlor is a nonresident, the situs shall be either "in a county in which any trustee resides" or, if no trustee resides in Pennsylvania, "then in a county where property of the trust is located." Unitarian Universalist Association argues that since there were no assets in Pennsylvania when the trustees filed their petitions, Philadelphia County was not the proper venue at that time. Salay v. Braun, 427 Pa. 480, 483 (1967), provides a complete answer to such argument, viz.:

". . . The propriety of venue is determined retrospectively after the writ is served and on what actually happened in the county of suit after the writ issued."

Here, what "actually happened in the county of suit after" the citation was served is that assets of the trust were brought into "the county of suit."

Finally, Unitarian Universalist Association argues that if this court assumes jurisdiction of this trust and adjudicates its rights and interests in the trust property, this court will violate its rights under the Fourteenth Amendment to the United States Constitution. It relies upon Hanson v. Denckla, 357 U. S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). That case involved the question of whether or not a power of appointment with respect to trust property was validly exercised. The trust property was located in Delaware and the trustee was domiciled in Delaware. The validity of the exercise of the power was questioned in connection with the administration of the estate of the holder of the power who died a domiciliary of Florida. The Florida court ruled that under Florida law, the power was not validly exercised. The United States Supreme Court held that Florida had no jurisdiction over the subject matter, because the trust res was located in Delaware, and the attempt of the Florida Court to exercise jurisdiction violated the fourteenth amendment, stating, at 2 L. Ed. 2d, page 1295:

"Since a State is forbidden to enter a judgment *attempting to bind a person over whom it has no jurisdiction*, it has even less right to enter a judgment purporting to extinguish the interest of such a person in property over which the Court has no jurisdiction . . ." (Italics supplied.)

However, the quoted language points up the difference between the two cases, viz., in the instant case

the trustees have voluntarily submitted to the jurisdiction of this court, and have actively sought relief from it by filing the petitions now at issue. Furthermore, there is now a substantial portion of the trust corpus in the possession of the Girard Trust Company in Philadelphia, Pa. Hence, there is no prohibition under the United States Constitution to this court's assuming jurisdiction.

The remaining question is the jurisdiction of this court over the United States of America and the Commissioner of Internal Revenue.

Pursuant to the prayer of the petition, this court entered a decree dated September 3, 1971, providing, inter alia:

"A. Hereby authorizes the United States of America through its proper officers, and the Commissioner of Internal Revenue to appear as parties in interest in the proceedings initiated by the within petition; and

"B. Hereby awards a citation directed to the United States of America, the Commissioner of Internal Revenue . . . to show cause why this court should not grant a declaratory judgment . . ."

Under date of December 31, 1971, this court issued a similar decree with respect to reformation of the trust deeds. Copies of these decrees were served upon the United States of America and the Commissioner of Internal Revenue. Under section 707 of the Orphans' Court Act of 1951, as amended, 20 PS §2080.707,[6] this constituted only an invitation to the United States of America and the Commissioner of Internal Revenue to participate in this important litigation which has various Federal tax aspects.

---

[6] See Probate, Estates and Fiduciary Code, section 767.

The United States of America and the Commissioner of Internal Revenue have filed preliminary objections to all the petitions filed in the 17 trusts presently before the court, seeking their dismissal as parties to these proceedings. The Commissioner of Internal Revenue is in the same position as the United States of America, since any relief granted to the petitioners would affect the Commissioner of Internal Revenue in his official capacity as an agent of the United States Government. See Larson v. Domestic and Foreign Corp., 337 U. S. 682 (1949), rehearing denied, 338 U. S. 840 (1949); Malone v. Bowdoin, 369 U. S. 643 (1962).

The law is certain and absolute that, in the absence of a waiver of sovereign immunity, neither the United States of America nor the Commissioner of Internal Revenue can be compelled to be parties to these proceedings: United States v. Brosnan, 363 U. S. 237 (1960); Minnesota v. United States, 305 U. S. 382 (1939).

In Righter Estate, 46 D. & C. 2d 571 (C. P. Northumberland Co., 1969), the executors of an estate filed a petition in the Orphans' Court Division seeking a declaratory judgment as to a provision of a testamentary trust. The executors served the United States of America with a citation pursuant to the procedure set forth in the above mentioned statute. The United States moved for its dismissal as a party. The court stated, at page 573:

"Where the United States has not consented to be sued and has not chosen to intervene, it, as a sovereign power, is immune from suit: Malone v. Bowdoin, 369 U.S. 643, 8 L. Ed. 2d 168 (1962); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 93 L. Ed. 1629 (1949).

"The legislature, therefore, can not confer power on the Orphans' Court to compel the United States to become a party to these proceedings. Neither did the legislature by its enactment of the 1963 amendments cited above to Uniform Declaratory Judgments Act and the Orphans' Court Act intend to confer such power."

It is clear, therefore, that this court has no power to compel the United States of America or the Commissioner of Internal Revenue to become parties to this suit. This court has no power to bind the United States of America, without its consent, unless a final decision of our Supreme Court proves to be binding under Commissioner v. Estate of Bosch, 387 U. S. 456 (1967). However, the United States of America may wish to enter these proceedings at some later stage. For these reasons the preliminary objections will be sustained pro forma, with leave to the United States of America and the Commissioner of Internal Revenue to appear in any later phase of the present litigation.

Accordingly, we hereby rule that (1) this court has jurisdiction of the petitions for declaratory judgment and the petitions for reformation of the trust agreements; (2) that Philadelphia County, Pa., is the proper venue; and (3) that this court has no power to compel the United States of America or the Commissioner of Internal Revenue to become parties in this litigation. Hence, it is hereby ordered and decreed that (1) the preliminary objections of the Unitarian Universalist Association are dismissed and it is ordered to file an answer upon the merits within 30 days and (2) the preliminary objections of the United States of America and the Commissioner of Internal Revenue are sustained pro forma, with leave to the United States of America and the Commissioner of Internal Revenue to appear in any later phase of the pending litigation.